*Supp. 17 Opinion
MARSHALL, J.
The defendant, one of the registered owners and persons in charge of the Westpoint, a commercial fishing vessel, a “purse seiner,” set nets from 200 to 1,300 miles from the California coast. Upon his return to Terminal Island, a state fish and game warden found that the yellowfin tuna catch brought ashore exceeded the federal limit. A complaint was filed against defendant charging him with “violation of Section 108 of Title 14 of the California Administrative Code adopted pursuant to Title 50, Code of Federal Regulations, Section 280.7(b)(2)” in that he was the “person in charge of a fishing vessel after the closing of the yellowfin tuna season and did enter the regulated fishing area who did wilfully and unlawfully possess on board such vessel an amount of yellowfin tuna in excess of 15% by round weight of his total catch.” The defendant was convicted, placed on probation and his fish forfeited.
We hold that the state regulation under which defendant was charged is an infringement of a preempted area of law. A review of the federal (and foreign) laws and regulations in the field supports this conclusion. Five countries, in addition to the United States, have signed the Convention for the Establishment of an Inter-American Tropical Tuna Commission (IATTC): Canada, Japan, Mexico, Panama and Costa Rica. Following the recommendation of the tuna commission to limit the annual catch of yellowfin tuna in the eastern Pacific, the United States ratified two treaties which required each of the five countries and the United States to implement such limitation. (See 13 U.S.T. & O.I.A. 2312, art. II, T.I.A.S. No. 5200; 17 U.S.T. & O.I.A. 138, art. I, par. 2, T. I.A.S. No. 5969.)
The United States also enacted legislation to provide for the issuance and enforcement of comprehensive federal regulations. (See 64 Stat. 777 (1950) and 76 Stat. 923 (1962), 16 U.S.C. §§ 951-961.) “After publication in the Federal Register such regulations shall be applicable to all vessels and persons subject to the jurisdiction of the United States . ...” (16 U. S.C. § 955(c).) Subdivision (a) of section 957 of 16 United States Code provides that “[i]t shall be unlawful for any master or other person in charge of a fishing vessel of the United States to engage in fishing in violation of any regulation ... or for any person knowingly to ship, transport, purchase, sell, offer for sale, import, export, or have in custody, possession, or control any fish taken or retained in violation of such regulations.”
*Supp. 18 The statute provides for the fining of violators (16 U.S.C. § 957(d)) and declares that “[a]ll fish taken or retained in violation of subsection (a) of this section [§ 957], or the monetary value thereof, may be forfeited.” (16 U.S.C. § 957(g).)
The federal regulations dealing with yellowfin tuna are detailed, complex and comprehensive. (50 C.F.R. § 280.1-280.14.) The IATTC recommends each year a specific limit on the quantity of yellowfin tuna that may be taken from the eastern Pacific by fishermen of the six countries previously named. That limit is published in the Federal Register. (50 C.F.R. §§ 280.1(g), 280.3.) The open season begins on January 1 of each year and closes on a date determined by the director of investigation of the commission. The Director of the National Marine Fisheries Service within the Department of Commerce publishes the date in the Federal Register (50 C.F.R. § 280.5).
After the season closes, fishermen can only land yellowfin tuna in limited quantities as an incident to fishing for species with which yellowfin may be mingled. Purse seiners of varying weights “may land in any port” certain maximum percentages of yellowfin “by round weight of its total catch.” (50 C.F.R. § 280.7(b)(2).) Yellowfin landed in excess of such limitations are subject to seizure and forfeiture. (50 C.F.R. § 280.7(c)-(k), 280.11.) The defendant’s catch occurred after the season had closed.
Although section 8374 of the California Fish and Game Code provides that “[y]ellowfin tuna . . . may be taken at any time,” section 313 of that code states that the State Fish and Game Commission “may prohibit the taking or possessing of tuna in the same manner as taking or possessing tuna is prohibited by federal law or by rules or regulations adopted pursuant to the Tuna Conventions Act of 1950, as amended . . . notwithstanding any other provision of this code.” Pursuant thereto the state commission has adopted the following regulation: “The regulations adopted pursuant to Title 50, Code of Federal Regulations . . . Sections 280.1 through 280.12, issued under ... 16 USC 951, and adopted and filed on June 11, 1968, and as such regulations may be revised or amended in the future, relating to the taking and possession of yellowfin tuna are hereby adopted and made a part of this Title 14, including the catch limit and closed season as announced by the Director of the Bureau of Commercial Fisheries in accordance with Sections 280.3 and 280.5, respectively.” (Cal. Admin. Code, tit. 14, § 108.)
*Supp. 19 Section 12000 of the Fish and Game Code declares it to be a misdemeanor to violate any provision of the code or “any rule, regulation, or order made or adopted under this code.” Punishment for such violation is by a fine of $500 or six months in jail or both (§ 12002) and seizure of the fish. (§ 12159.)
Congress, by its all-embracing regulations, has fully covered the field and preempted any regulation by California, certainly insofar as fishing in international waters is concerned, an area of law in which Congress has “paramount authority.” (U.S. Const., art. VI, cl. 2; see People v. Conklin (1974) 12 Cal.3d 259, 264, fn. 4 [114 Cal.Rptr. 241, 522 P.2d 1049]; see e.g., Goldstein v. California (1973) 412 U.S. 546, 567 [37 L.Ed.2d 163, 179-180, 93 S.Ct. 2303]; Rice v. Santa Fe Elevator Corp. (1947) 331 U.S. 218, 230 [91 L.Ed. 1447, 1459, 67 S.Ct. 1146]Pennsylvania v. Nelson (1956) 350 U.S. 497, 501, 502 [100 L.Ed. 640, 651, 652, 76 S.Ct. 477].)
An additional and basic defect in the judgment of conviction is the unlawful delegation of state authority countenanced by section 313 of the Fish and Game Code.[1] Section 313 enables the commission to prohibit any act in turn barred by rules or regulations adopted pursuant to the Tuna Conventions Act. Such rules or regulations may include those to be enacted in the future as well as those presently issued. Whether or not the Legislature intended that the commission adopt prospective federal regulations, the state regulations have done just that. Section 108 of title 14 of the California Administrative Code declares that the state adopts the federal regulations at issue herein as they were then “and as such regulations may be revised or amended in the future.” While existing statutes may be incorporated by reference, prospective incorporation has never been approved by a California court. The court in Brock v. Superior Court (1937) 9 Cal.2d 291, 297 [71 P.2d 209, 114 A.L.R. 127] declared: “It is, of course, perfectly valid to adopt existing statutes, rules or regulations of Congress or another state, by reference; but the attempt to make future regulations of another jurisdiction part of the state law is generally held to be an unconstitutional[2] delegation of legislative power.” (Italics in the original.) (See 2 Marshall, State and Local Taxation (2d ed. 1969) § 671, pp. 234-236.) As the complaint charges defendant with á violation expressly based on the section (§ 108) *Supp. 20 which unconstitutionally delegates legislative power, and on title 50 of the Code of Federal Regulations (§ 280.7(b)(2)), the conviction is invalid.
Finally, it should be observed that the defendant was afforded no notice that his conduct was criminal. In fact, section 8374 of the Fish and Game Code declares that yellowfin tuna “may be taken at any time.” Only by noting section 313 which grants power to the commission to prohibit such taking and then searching out the relevant prohibitory federal regulations can one know of his criminality. Even then he may not gain such knowledge because the regulation may have been adopted after he had checked the federal register. Surely such notice does not afford a “person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.” (See Grayned v. City of Rockford (1972)'408 U.S. 104, 108 [33 L.Ed.2d 222, 227, 92 S.Ct. 2294]; Bouie v. City of Columbia (1964) 378 U.S..347, 352 [12 L.Ed.2d 894, 899, 84 S.Ct. 1697].)
The judgment is reversed.
Alarcon, J., concurred.

The Fish and Game Commission referred to in section 313 possesses such powers as are delegated to it by the Legislature (Fish & G. Code, § 22). Among such delegated powers is the power to regulate the taking or possession of fish.

California Constitution, article III.