[No. C043341. Third Dist. Jan. 14, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH LEE MARTINEZ, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II, IV, V, VI, and VIII, of the Discussion. The concurring opinions are not to be published except for the first paragraph of each.

1036

**COUNSEL**

Geri Lyn Green, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Mary Jo Graves, Assistant Attorneys General, Stan Cross and Janet E. Neeley, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, J.**—A jury convicted defendant Kenneth Lee Martinez of torture (count 1; Pen. Code, § 206; undesignated section references are to the Penal Code); five counts of assault by means of force likely to produce great bodily injury or with a deadly weapon (counts 2–6; § 245, subd. (a)(1)); corporal injury to a cohabitant (count 7; § 273.5); forcible rape (count 8; § 261, subd. (a)(2)); forcible oral copulation (count 9; § 288a, subd. (c)); criminal threats (count 11; § 422); dissuading a witness by force or threat (count 12; § 136.1, subd. (c)(1)); and false imprisonment by violence (count 13; § 236). The jury also found as to counts 7 through 9 that defendant personally inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)), and as to counts 8 and 9 that defendant inflicted torture and great bodily injury upon the victim (§ 667.61, subds. (a), (d)(3); *id.*, subds. (b), (e)(3)), personally used a deadly weapon, and personally inflicted great bodily injury (§ 667.61, subds. (b), (e)(4); *id.*, subds. (a), (e)(3)).[1]

The trial court sentenced defendant to a total term of 54 years, eight months to life in state prison. The court imposed 25 years to life on count 8, the principal term, pursuant to the one strike law (§ 667.61), and imposed the same term on the enhancements to count 8 but stayed that term under section 654. The court then imposed a consecutive sentence of 25 years to life on count 9, finding that the offenses charged in counts 8 and 9 occurred on separate occasions. The court further imposed consecutive sentences of one year (one-third the middle term) on count 2, three years (the middle term) on count 12, and eight months (one-third the middle term) on count 13. Finally, the court imposed sentences on the remaining counts and enhancements (count 1, life; counts 3–6, four years (the upper term); count 7, four years (the upper term); the enhancement to count 7, five years (the upper term); count 11, three years (the upper term)), but stayed them under section 654.

Defendant contends: (1) Counts 2 through 13 are lesser included offenses of count 1 (torture) and therefore must be stricken. (2) Alternatively, if torture is not a continuous-course-of-conduct offense, the trial court erred by failing to give the jury a unanimity instruction as to both torture and the other substantive offenses. (3) The statute defining torture (§ 206) was "[s]uperseded" (i.e., preempted) by the United States's ratification of an international convention on torture. (Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, eff. June 26, 1987, 1465 U.N.T.S. 85 (Convention Against Torture).) (4) The trial court violated due process by instructing the jury with CALJIC No. 2.50.02. (5) Section 206 is void for

---

[1] Defendant was acquitted on count 10, which charged a second act of forcible oral copulation. The prosecution dismissed counts 14 through 16, charging assault with intent to commit rape (§ 220), in the interests of justice.

vagueness, facially and as applied. (6) The trial court erred by imposing consecutive sentences on counts 8 and 9 under section 667.61 because the offenses were committed on a single occasion. (7) The trial court's admission of the victim's out-of-court statements violated *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177, 124 S.Ct. 1354] (*Crawford*). (8) The trial court's sentencing violated *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*).

In the published portion of the opinion, we conclude (1) counts 2 through 13 are not lesser included offenses of count 1 (torture); (2) the statute defining torture (§ 206) is not preempted by the Convention Against Torture or by federal statutes implementing the same; and (3) the trial court's admission of the victim's out-of-court statements did not violate *Crawford, supra*, 541 U.S. 36 [158 L.Ed.2d 177, 124 S.Ct. 1354].

In the unpublished portion of the opinion, we reject defendant's remaining contentions of error.

We shall therefore affirm the judgment.

### FACTS

On June 8, 2002,[2] R., the victim, and defendant, her live-in boyfriend, got into a physical fight at his workplace. Both were arrested and jailed. R. bailed out that day, but defendant spent four days in jail.

When released from jail, defendant went back to the home of R. and her 12-year-old son in Stockton. However, on June 14, defendant learned that the fight with R. at his workplace had cost him his job. Instead of going home, he went to a friend's house in Thornton. Early the next day, defendant called R. to ask her to come pick him up.

After R. got there, defendant burst out of a parked van, grabbed her by the hair, and dragged her into the van. Keeping her trapped inside, he accused her of making him lose his job, vandalizing his vehicle, and stealing his briefcase. He struck her with a chain on the head, back, and shoulders and kicked her repeatedly with steel-toed boots.

Later in the day, defendant drove with R. back to her house. When he fell asleep, she left to look for her missing wallet. She did not report defendant to the police at that point because she feared for the safety of her son if she did so, and because the police had sided with defendant over her in the June 8

---

[2] All further dates are in 2002 unless otherwise stated.

incident. Furthermore, defendant had disconnected the telephones in the house.

From Sunday, June 16, to Tuesday, June 18, defendant held R. hostage and beat her repeatedly, at different times using his fists, his steel-toed boots, a star-shaped tire iron, a flashlight, and a metal nail puller. He also raped her and forced her to orally copulate him three or four times.[3] Throughout this period, he continued to berate her about his lost job; he also threatened to kill her and her family if she told anyone about what he was doing to her.

On June 17, R. went across the street to her neighbor M.G.'s house to get hamburger meat. M.G. noticed R.'s face was bruised and asked her to stay, but R. said she could not because defendant would get mad at her. M.G. urged R. to call the police, but R. said she did not want to get M.G. involved.

On the evening of June 18, defendant twice poured rubbing alcohol over R. while they were in the bathroom, then set pieces of toilet paper alight and threw them at her. He told her he wanted her to die and to see her burn in hell.

Failing to set R. on fire the first time, defendant poured a bottle of hydrogen peroxide over her and told her to shower. She could not undress or operate the shower because her hands were broken. Defendant forced her in and poured shampoo on her head. When he put her hands on her head, she screamed in extreme pain. He ordered her to dress and put on makeup, but she could not. He kept on hitting and kicking her.

Defendant then repeated the process, again trying and failing to set R. on fire, then forcing her into the shower. He pulled her up by the arms, which had been broken in the course of his assaults. He again demanded sex. R. felt sure she would die if she did not escape.

When defendant left the bathroom for a moment, R. ran naked out of the bathroom and across the street to M.G.'s house, where she was able to call 911.

The emergency room doctor observed that R. was bruised all over. She had significant swelling and broken skin over her right temple, deeply bruised

---

[3] R.'s recollections about these incidents were not precise. She told one officer she was forced to have sex with defendant three to four times. She told another she had consensual sex with defendant once during this period, but the remaining times were nonconsensual. She also remembered two incidents of forced oral copulation. (As noted, the jury convicted defendant of one such act but acquitted him of another.)

A rape examination done shortly after R.'s escape from captivity confirmed that she had had sex after Saturday, June 15.

forearms, and a bony deformity in one arm. X-rays revealed both forearms, a rib, and a leg bone were broken; the right forearm had multiple fractures. R.'s lesions looked like the result of being beaten with a crowbar or tire iron, as she told the doctor she was.

The prosecution also introduced the testimony of K.M. pursuant to Evidence Code section 1109. K.M., a former girlfriend of defendant's who had had a child with him, testified that on May 2, 1999, defendant unexpectedly came to her apartment. During the ensuing conversation, he got mad at her, struck her in the face, and damaged the apartment. When she tried to leave, he grabbed her arm hard enough to cause a bruise.

At trial, R. repudiated her prior accounts inculpating defendant, including her stories to the police and her preliminary hearing testimony. She claimed she assaulted defendant repeatedly during the episode, while defendant hit and kicked her only once near the end of the episode and only in self-defense. According to R., she was jealous about defendant's imagined infidelity and was drinking heavily throughout the episode. She suffered almost all her injuries either from falling off a gate when she jumped a fence at the Thornton residence or from falling off a ladder when trying to kick defendant.

In addition to presenting R.'s preliminary hearing testimony and the stories she had previously told police and others, the prosecution impeached R.'s trial testimony by introducing the tape and transcript of her conversation with defendant and her son-in-law during a jail visit after the preliminary hearing. In that conversation, defendant repeatedly apologized for what he had done and told R. he loved and needed her, she repeatedly told him she loved and needed him, and they talked about how to get this incident behind them and reunite. Her son-in-law said the two of them would have to "get a story going and . . . make sure it sounds right."

Defendant did not testify.

## DISCUSSION

## I

Defendant contends that counts 2 through 13 were lesser included offenses of torture (count 1) because the substantive offenses charged in counts 2 through 13 were "[t]he underlying acts which constituted the torture." Therefore, defendant says, his convictions on those counts must be stricken.[4]

---

[4] As previously mentioned, defendant was acquitted on count 10 (forcible oral copulation).

 "[M]ultiple convictions may *not* be based on necessarily included offenses. [Citations.]" (*People v. Pearson* (1986) 42 Cal.3d 351, 355 [228 Cal.Rptr. 509, 721 P.2d 595].)

An offense is a lesser included offense to a charged offense if the former is necessarily included in the latter. There are two tests to determine whether this is so: (1) if all of the elements of the lesser offense are included in the elements of the greater offense, or (2) if the allegations of the pleading describe the charged offense so that it necessarily includes all the elements of the lesser offense. (*People v. Lopez* (1998) 19 Cal.4th 282, 288–289 [79 Cal.Rptr.2d 195, 965 P.2d 713].)

## A. The Elements-of-the-offense Test

Section 206 defines the crime of torture as follows: "Every person who, with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great bodily injury as defined in Section 12022.7 upon the person of another, is guilty of torture. [¶] The crime of torture does not require any proof that the victim suffered pain."

The offenses charged in counts 2 through 9 and 11 through 13 consisted of assault by means of force likely to produce great bodily injury or with a deadly weapon (§ 245, subd. (a)(1); counts 2–6); corporal injury to a cohabitant (§ 273.5; count 7); forcible rape (§ 261, subd. (a)(2); count 8); forcible oral copulation (§ 288a, subd. (c); count 9); criminal threats (§ 422; count 11); dissuading a witness by force or threat (§ 136.1, subd. (c)(1); count 12); and false imprisonment by violence (§ 236; count 13). (See Amended Information at appen., *post.*)

We shall begin with counts 7 through 13. None of these is a necessarily included offense of torture as defined in section 206 because all have elements not necessarily included in torture. Torture does not require that the victim be a cohabitant, as does the crime charged in count 7. It does not require sexual conduct, as do the crimes charged in counts 8 and 9. It does not require the making of threats, as does the crime charged in count 11. And it does not require false imprisonment, as does the crime charged in count 13.

This leaves counts 2 through 6.

Each of these counts was pled in the following manner, with a different deadly weapon named in each count: "On or about JUNE 15, 2002 TO JUNE 18, 2002 the crime of ASSAULT BY MEANS OF FORCE LIKELY TO

PRODUCE GREAT BODILY INJURY OR WITH DEADLY WEAPON AND INSTRUMENT in violation of Section 245(a)(1) of the Penal Code, a FELONY was committed by KENNETH LEE MARTINEZ, who at the time and place last aforesaid, did willfully and unlawfully commit an assault upon JANE DOE, with a deadly weapon, to wit, . . . or by means of force likely to produce great bodily injury." (See appen., *post.*)

This pleading tracks the language of section 245, subdivision (a)(1) which provides in pertinent part: "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by means of force likely to produce great bodily injury shall be punished . . . ."

As is readily apparent, the statute describes two different ways of committing a prohibited assault: (1) by use of a deadly weapon or instrument other than a firearm *or* (2) by means of force likely to produce great bodily injury.

This dichotomy in the statute tenders an interesting puzzle in this case, because while an assault by means of force likely to produce great bodily injury is arguably an included offense within the crime of torture, assault with a deadly weapon is not, as we shall explain in a moment.

However, we think this riddle must be solved by focusing on the rule the defendant seeks to apply here: that a defendant may not be *convicted* of an offense that is a lesser included offense to torture.

In this case, the record makes clear that defendant was *convicted* upon a theory that he committed an assault with a deadly weapon, not assault by means of force likely to produce great bodily injury. (See *People v. McGee* (1993) 15 Cal.App.4th 107 [19 Cal.Rptr.2d 12].) This is so for the following reasons:

1. With respect to counts 2 through 6, the trial court instructed, "The defendant is accused in Count 2 through 6 of having violated Section 245(a)(1) of the Penal Code, assault with a deadly weapon, a felony. [¶] A deadly weapon is any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce death or great bodily injury."

The trial court did *not* instruct the jury that it could find defendant committed the offense charged in counts 2 through 6 by finding he committed an assault by means of force likely to produce great bodily injury.

2. In their closing arguments, both prosecutor and defense counsel described the offense charged in counts 2 through 6 as "assault with a deadly weapon." Thus, for example, the prosecutor argued, "Now there's several counts of what's called assault with a deadly weapon. And these were committed with a chain, this flashlight, the crowbar, tire iron." The prosecutor did *not* argue the offense at issue in counts 2 through 6 could be committed by means of force likely to produce great bodily injury. By limiting his argument in this manner (to an assault with a deadly weapon), the prosecutor elected that theory of prosecution.

3. Finally, and most conclusively, each verdict on counts 2 through 6 was in the following form (with a different deadly weapon specified in each count): "We, the Jury, in the above entitled cause, find the defendant, KENNETH MARTINEZ, guilty of a violation of Section 245(a)(1) of the Penal Code of the State of California, to-wit: ASSAULT WITH A DEADLY WEAPON, to wit: . . . a felony, as charged and set forth in Count . . . of the Information on file herein."

It is therefore clear that defendant was convicted of violation of section 245, subdivision (a)(1) upon the theory that he used a deadly weapon. (See *People v. McGee, supra,* 15 Cal.App.4th 107, 115.) Because defendant was convicted upon this theory, his violation of section 245, subdivision (a)(1) was not a lesser included offense of torture, because his violation of section 245, subdivision (a)(1) required that he use a deadly weapon, whereas the crime of torture does not require the use of any weapon. (See *People v. Arnett* (1899) 126 Cal. 680, 681 [59 P. 204].)

We recognize that in *In re Mosley* (1970) 1 Cal.3d 913 [83 Cal.Rptr. 809, 464 P.2d 473], our Supreme Court said, "As indicated above, the information charged petitioner with assault with a deadly weapon in violation of section 245 of the Penal Code. The court found him guilty of assault by any means of force likely to produce great bodily injury in violation of the same section. The judgment, after setting forth this finding, states that the offense of which petitioner was found guilty is 'a lesser offense than that charged in the information but necessarily included therein.' This is not so. Section 245 . . . defines only one offense, to wit, 'assault upon the person of another with a deadly weapon or instrument or by means of force likely to produce great bodily injury. . . .' The offense of assault by means of force likely to produce great bodily injury is not an offense separate from—and certainly not an offense lesser than and included within—the offense of assault with a deadly weapon." (*Id.* at p. 919, fn. 5.)

However, the court continued, "This is not to say, of course, that a judgment may not properly specify which of the two categories of conduct prohibited by section 245 (i.e., assault (1) with a deadly weapon or instrument, or (2) by means of force likely to produce great bodily injury) was involved in the particular case. We believe that such a finding should be made for the benefit of probation and correction officials who may . . . attach significance thereto." (*In re Mosley, supra,* 1 Cal.3d 913, 919, fn. 5.) Another salutary purpose of such a finding (which was made in this case) is to allow a court to determine whether the violation of section 245, of which defendant was convicted, was a lesser included offense within some other, greater offense of which defendant was convicted. That is what we have done here.

Applying the elements test of lesser included offenses, no offense in counts 2 through 9 and 11 through 13 was a lesser offense of torture.

### B. *The Pleadings Test*

Even assuming the pleadings test of lesser included offenses applies in this context (but see *People v. Scheidt* (1991) 231 Cal.App.3d 162, 165–170 [282 Cal.Rptr. 228]), these offenses were also not necessarily included in torture as pled here. The amended information on which the case went to trial alleged as to count 1: "On or about JUNE 15, 2002 TO JUNE 18, 2002 the crime of TORTURE, in violation of Section 206 of the Penal Code, a FELONY, was committed by KENNETH LEE MARTINEZ, who at the time and place last aforesaid did willfully and unlawfully and with the intent to cause cruel and [*sic*] extreme pain and suffering for the purpose of revenge, extortion, persuasion and [*sic*] for a [*sic*] sadistic purpose, inflict great bodily injury, as defined in Penal Code Section 12022.7 upon JANE DOE." Aside from its erroneous substitutions of "and" for "or," the pleading did not change the definition of the offense. Thus it did not incorporate the otherwise extraneous elements of any offense charged in the remaining counts.

Nor did the manner of pleading the remaining counts change the picture. Each assault count alleged the use of a different weapon or instrument: a chain (count 2), a flashlight (count 3), a crowbar (count 4), a tire iron (count 5), and fire (count 6). None of these specific means was alleged in count 1. Nor, as already noted, were any of the specific elements of the remaining counts. (See appen., *post.*)

■ Defendant asserts that if the offense of torture in this case was a continuous course of conduct, the "underlying acts which constituted the torture" are necessarily included offenses of torture. He cites no authority for this proposition, however—understandably, as it is a non sequitur. Whether acts comprise part of a continuous course of conduct has nothing to do with

whether they are *necessarily* included, either by statutory definition or by pleading, within the principal offense. (Cf. *People v. Lopez, supra,* 19 Cal.4th 282, 288–289.)

Contrary to defendant's contention, the offenses of which he was convicted on counts 1 through 9 and 11 through 13 were not lesser included offenses of torture.

## II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III

Defendant further attacks his conviction for torture by contending that the United States's ratification of the Convention Against Torture has preempted section 206.[5] Defendant is wrong.

Article 1 of the Convention Against Torture, 1465 U.N.T.S. 85, defines torture "[f]or the purposes of this Convention" as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, *when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.*" (Italics added.) Article 1 further provides: "This article is without prejudice to any international instrument or national legislation which does or may contain provisions of wider application." (Convention Against Torture, 1465 U.N.T.S. 85, art. 1, §§ 1–2.)

Article 2 requires each state party to the Convention on Torture to take effective measures to prevent torture within its jurisdiction and bars the use of "exceptional circumstances" or superior orders as justifications for torture. Article 3 bars state parties from extraditing persons to other states where substantial grounds exist to believe they would be in danger of torture. Article 4 requires each state party to ensure that all acts of torture are offenses under its criminal law. Article 5 requires each state party to establish jurisdiction

---

*See footnote, *ante,* page 1035.

[5] The heading of this argument alleges section 206 was "[s]uperceded" by the Convention Against Torture. However, defendant's argument makes clear he is talking about preemption.

over all such offenses in all territories it controls or on board its ships and aircraft. Article 6 requires any state party in whose territory a suspected torturer is present to take him into custody. Article 7 requires such state party to submit the detained person to its competent authorities for prosecution. Article 8 establishes the Convention on Torture as a legal basis for extradition in cases of torture where state parties do not have treaties of extradition between themselves. Article 9 requires state parties to assist each other as far as possible in connection with civil proceedings brought pursuant to article 4. Article 10 requires state parties to educate all persons who may be involved in the custody, interrogation, or treatment of any person regarding the prohibition against torture. Article 11 requires state parties to review their methods of custody and treatment of detained persons with a view to preventing torture. Article 12 requires state parties to ensure that their competent authorities investigate all suspected cases of torture promptly and impartially. Article 13 requires state parties to guarantee the right of persons claiming they have been tortured to a prompt and impartial investigation and to protection against retaliation for their complaints. Article 14 requires state parties to provide in their legal systems for full redress and compensation for torture victims. Article 15 bars the use of evidence obtained by torture in any proceeding. Article 16 requires state parties to undertake to prevent within their jurisdictions acts of cruel, inhuman or degrading treatment or punishment not amounting to torture as defined in article 1, "when such acts are committed by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," and further provides that the Convention on Torture's provisions are without prejudice to the provisions of any other national law or international instrument relating to this topic. (Convention Against Torture, 1465 U.N.T.S. 85, arts. 2–16.)[6]

The United States Senate ratified the Convention Against Torture with a number of reservations, interpretive understandings, and declarations, including the following: "The Senate's advice and consent is subject to the following declarations: (1) *That the United States declares that the provisions of articles 1 through 16 of the Convention are not self-executing*." (Reservations, Understandings, and Declarations, Convention Against Torture, 136 Cong. Rec. 36198 (1990).)

██ "Under the supremacy clause of the United States Constitution (art. VI, cl. 2), Congress has the power to preempt state law concerning matters that lie within the authority of Congress. [Citation.] In determining whether

---

[6] The remaining provisions of the Convention Against Torture (arts. 17–33), which deal with the international implementation of the convention, are not material to our discussion.

federal law preempts state law, a court's task is to discern congressional intent. [Citation.] Congress's express intent in this regard will be found when Congress explicitly states that it is preempting state authority. [Citation.] Congress's implied intent to preempt is found (i) when it is clear that Congress intended, by comprehensive legislation, to occupy the entire field of regulation, leaving no room for the states to supplement federal law [citation]; (ii) when compliance with both federal and state regulations is an impossibility [citation]; or (iii) when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' [Citations.]" (*Bronco Wine Co. v. Jolly* (2004) 33 Cal.4th 943, 955 [17 Cal.Rptr.3d 180, 95 P.3d 422].) Defendant fails to show any basis for finding preemption under any of these tests.

It is untenable that Congress intended the Convention on Torture itself to preempt state laws against torture. The Senate's ratification of the Convention on Torture was expressly subject to a provision declaring articles 1 through 16 as "not self-executing." Congress could not have intended state antitorture laws to be preempted by an agreement that contained no sanctions against torture.

Defendant has cited no law enacted by the Congress that executes the Convention on Torture. However, our independent research has discovered chapter 113C of title 18 of the United States Code, (§ 2340 et seq.), entitled "Torture,"[7] which was enacted to implement the Convention Against Torture. (See Sen. Rep. No. 103-107, reprinted in 1994 U.S. Code Cong. & Admin. News, at p. 366.)

Section 2340 of title 18 provides in pertinent part: "As used in this chapter—[¶] (1) 'torture' means an act committed by a person *acting under the color of law* specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control." (Italics added.)

Section 2340A of title 18 provides in pertinent part: "(a) Offense.— Whoever *outside the United States* commits or attempts to commit torture shall be fined under this title or imprisoned not more than 20 years, or both, and if death results to any person from conduct prohibited by this subsection, shall be punished by death or imprisoned for any term of years or for life." (Italics added.)

Finally, section 2340B of title 18 provides: "*Nothing in this chapter shall be construed as precluding the application of State* or local *laws on the same*

---

[7] Further references to title 18 are to the United States Code.

*subject*, nor shall anything in this chapter be construed as creating any substantive or procedural right enforceable by law by any party in any civil proceeding." (Italics added.)

Congress could not have intended chapter 113C of title 18 to preempt state antitorture laws, because (1) the chapter outlaws only torture undertaken under the color of law; Congress could not have intended other torture, punished by state laws, to go unpunished; (2) the chapter outlaws torture committed outside the United States; Congress could not have intended *torture committed inside the United States* to go unpunished; and (3) Congress has unambiguously declared that "[n]othing in this chapter shall be construed as precluding the application of State . . . laws on the same subject . . . ."

Aside from the Convention itself, defendant relies solely on *People v. Kruger* (1975) 48 Cal.App.3d Supp. 15 [121 Cal.Rptr. 581], which held that the United States's ratification of a convention dealing with tuna fishing had preempted California regulation of yellowfin tuna fisheries. (*Id.* at pp. 17–20.) This decision is inapposite. Congress, after ratifying the convention, had enacted legislation and implementing regulations in accordance with the convention. These legislative actions fully occupied the field. And the field itself (fishing in international waters) was an area of law in which Congress had paramount authority. (*Id.* at p. 20.) None of these factors applies to section 206.

Defendant has failed to show that section 206 has been preempted by any federal law or international instrument.

IV–VI[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

VII

In a supplemental brief, defendant contends that the use of the victim's out-of-court statements at trial violated *Crawford, supra,* 541 U.S. 36 [158 L.Ed.2d 177]. We disagree.

---

[*]See footnote, *ante*, page 1035.

█ In *Crawford, supra,* 541 U.S. 36 [158 L.Ed.2d 177], the United States Supreme Court held that the use of out-of-court "testimonial" statements (including, inter alia, prior testimony at a preliminary hearing and police interrogations) against a defendant at trial violates the confrontation clause (U.S. Const., 6th Amend.) unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine. (*Crawford,* at p. 68 [158 L.Ed.2d at p. 203].) Here, the prosecution introduced the victim's preliminary hearing testimony and her statements to police officers, as well as other out-of-court statements by her.

*Crawford, supra,* 541 U.S. 36 [158 L.Ed.2d 177] also made clear, however, that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." (*Crawford, supra,* 541 U.S. at p. 59 [158 L.Ed.2d at pp. 197–198, fn. 9].) In support of this proposition, the court in *Crawford* cited to *California v. Green* (1970) 399 U.S. 149, 162 [26 L.Ed.2d 489, 499, 90 S.Ct. 1930], which held there is no confrontation clause violation from admitting out-of-court statements where the declarant is prepared to testify and submit to cross-examination.

█ Because the victim was present, testified, and submitted to cross-examination, the use of her prior out-of-court statements did not violate the confrontation clause. Her testimony at trial gave the jury the opportunity to assess her demeanor as she attempted to deny or explain away the prior statements. The confrontation clause requires no more. (*People v. Perez* (2000) 82 Cal.App.4th 760, 766 [98 Cal.Rptr.2d 522].)

VIII*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

---

*See footnote, *ante,* page 1035.

**BLEASE, Acting P. J.,** Concurring.—I concur in the judgment and in the opinion except as to Part VIII of the Discussion, as to which I concur in the result.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**RAYE, J.,** Concurring.—I concur in the opinion except as to part VIII, as to which I concur in the result.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

On January 14, 2005, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied April 20, 2005. George, C. J., did not participate therein.

---

*See footnote, *ante*, page 1035.

**APPENDIX**

**Counts 1 through 9 and 11 through 13 of the Amended Information**

"The said defendant(s) is/are accused by the District Attorney of the County of SAN JOAQUIN of the State of California, by this information, of the following crime(s):

"PC 206 TORTURE

COUNT: 001, On or about JUNE 15, 2002 TO JUNE 18, 2002 the crime of TORTURE, in violation of Section 206 of the Penal Code, a FELONY, was committed by KENNETH LEE MARTINEZ, who at the time and place last aforesaid did willfully and unlawfully and with the intent to cause cruel and extreme pain and suffering for the purpose of revenge, extortion, persuasion and for a sadistic purpose, inflict great bodily injury, as defined in Penal Code section 12022.7 upon JANE DOE.

"PC 245(A)(1) ADW/ASSLT W/FRC LIKELY GBI

COUNT: 002, for a further and separate cause of complaint, being a different offense from but connected in its commission with the charge set forth in Count 001, complainant further complains and says: On or about JUNE 15, 2002 TO JUNE 18, 2002 the crime of ASSAULT BY MEANS OF FORCE LIKELY TO PRODUCE GREAT BODILY INJURY OR WITH DEADLY WEAPON AND INSTRUMENT in violation of Section 245(a)(1) of the Penal Code, a FELONY was committed by KENNETH LEE MARTINEZ, who at the time and place last aforesaid, did willfully and unlawfully commit an assault upon JANE DOE, with a deadly weapon, to wit, CHAIN, or by means of force likely to produce great bodily injury.

"PC 245(A)(1) ADW/ASSLT W/FRC LIKELY GBI

COUNT: 003, for a further and separate cause of complaint, being a different offense from but connected in its commission with the charge set forth in Count 002, complainant further complains and says: On or about JUNE 15, 2002 TO JUNE 18, 2002 the crime of ASSAULT BY MEANS OF FORCE LIKELY TO PRODUCE GREAT BODILY INJURY OR WITH DEADLY WEAPON AND INSTRUMENT in violation of Section 245(a)(1) of the Penal Code, a FELONY was committed by KENNETH LEE MARTINEZ, who at the time and place last aforesaid, did willfully and unlawfully commit an assault upon JANE DOE, with a deadly weapon, to wit, FLASHLIGHT, or by means of force likely to produce great bodily injury.

"PC 245(A)(1) ADW/ASSLT W/FRC LIKELY GBI

COUNT: 004, for a further and separate cause of complaint, being a different offense from but connected in its commission with the charge set forth in Count 003, complainant further complains and says: On or about JUNE 15, 2002 TO JUNE 18, 2002 the crime of ASSAULT BY MEANS OF FORCE LIKELY TO PRODUCE GREAT BODILY INJURY OR WITH DEADLY WEAPON AND INSTRUMENT in violation of Section 245(a)(1) of the Penal Code, a FELONY was committed by KENNETH LEE MARTINEZ, who at the time and place last aforesaid, did willfully and unlawfully commit an assault upon JANE DOE, with a deadly weapon, to wit, CROWBAR, or by means of force likely to produce great bodily injury.

"PC 245(A)(1) ADW/ASSLT W/FRC LIKELY GBI

COUNT: 005, for a further and separate cause of complaint, being a different offense from but connected in its commission with the charge set forth in Count 004, complainant further complains and says: On or about JUNE 15, 2002 TO JUNE 18, 2002 the crime of ASSAULT BY MEANS OF FORCE LIKELY TO PRODUCE GREAT BODILY INJURY OR WITH DEADLY WEAPON AND INSTRUMENT in violation of Section 245(a)(1) of the Penal Code, a FELONY was committed by KENNETH LEE MARTINEZ, who at the time and place last aforesaid, did willfully and unlawfully commit an assault upon JANE DOE, with a deadly weapon, to wit, TIRE IRON, or by means of force likely to produce great bodily injury.

"PC 245(A)(1) ADW/ASSLT W/FRC LIKELY GBI

COUNT: 006, for a further and separate cause of complaint, being a different offense from but connected in its commission with the charge set forth in Count 005, complainant further complains and says: On or about JUNE 15, 2002 TO JUNE 18, 2002 the crime of ASSAULT BY MEANS OF FORCE LIKELY TO PRODUCE GREAT BODILY INJURY OR WITH DEADLY WEAPON AND INSTRUMENT in violation of Section 245(a)(1) of the Penal Code, a FELONY was committed by KENNETH LEE MARTINEZ, who at the time and place last aforesaid, did willfully and unlawfully commit an assault upon JANE DOE, with a deadly weapon, to wit, FIRE, or by means of force likely to produce great bodily injury.

"PC 273.5(A) INFLICT CORPORAL INJURY TO
SPOUSE/COHABITANT/[]

COUNT: 007, for a further and separate cause of complaint, being a different offense from but connected in its commission with the charge set forth in Count 006, complainant further complains and says: On or about JUNE 15, 2002 TO JUNE 18, 2002 the crime of CORPORAL INJURY TO SPOUSE/COHABITANT/PARENT OF CHILD, in violation of Section 273.5(A), A FELONY, was committed by KENNETH LEE MARTINEZ, who at the time and place last aforesaid, did willfully and unlawfully inflict a corporal injury resulting in a traumatic condition upon JANE DOE, who was then and there the spouse/cohabitant or parent of child of the defendant.

"PC 12022.7(E) INFLICTION OF GREAT
BODILY INJURY

It is further alleged that in the commission of the above offense the said defendant KENNETH LEE MARTINEZ, personally inflicted great bodily injury under circumstances involving domestic violence upon JANE DOE, within the meaning of Penal Code Section 12022.7(e) and also causing the above offense to be a serious felony within the meaning of Penal Code Section 1192.7(c)(8).

"PC 261(A)(2) RAPE: FORCE/FEAR/ETC

COUNT: 008, for a further and separate cause of complaint, being a different offense from but connected in its commission with the charge set forth in Count 007, complainant further complains and says: On or about JUNE 15, 2002 TO JUNE 18, 2002 the crime of FORCIBLE RAPE, in violation of Section 261(a)(2) of the Penal Code, a FELONY, was committed by KEN-NETH LEE MARTINEZ, who at the time and place last aforesaid, did willfully and unlawfully have and accomplish an act of sexual intercourse with a person, to wit: JANE DOE, not his/her spouse, against said person's will, by means of force, violence, duress, menace and [*sic*] fear of immediate and unlawfully [*sic*] bodily injury on said person and [*sic*] another. It is further alleged that the above offense is a serious felony within the meaning of Penal Code section 1192.7(c)(3).

"PC 12022.7(E) INFLICTION OF GREAT
 BODILY INJURY

It is further alleged that in the commission of the above offense the said defendant KENNETH LEE MARTINEZ, personally inflicted great bodily injury under circumstances involving domestic violence upon JANE DOE, within the meaning of Penal Code Section 12022.7(e) and also causing the above offense to be a serious felony within the meaning of Penal Code Section 1192.7(c)(8).

"PC 667.61(A)(D)(3) SPECIAL ALLEGATIONS
 SEX CRIMES

It is further alleged, within the meaning of Penal Code Section 667.61(a)(d)(3), as to KENNETH LEE MARTINEZ, that in the commission of the crime of Forcible Rape as defined in Penal Code Section 261(a)(2), the defendant inflicted torture on the victim, to wit: JANE DOE, as defined in Penal Code Section 206.

"PC 667.61(B)(E)(3) SPECIAL ALLEGATIONS
 SEX CRIMES

It is further alleged, within the meaning of Penal Code Section 667.61(b)(e)(3), as to KENNETH LEE MARTINEZ, that in the commission of the crime of Forcible Rape as defined in Penal Code Section 261(a)(2), the Defendant personally inflicted great bodily injury on the victim to wit: JANE DOE or another person in the commission of the present offense in violation of Section 12022.7, or 12022.8.

"PC 667.61(B)(E)(4) SPECIAL ALLEGATIONS
 SEX CRIMES

It is further alleged, within the meaning of Penal Code Section 667.61(b)(e)(4) , as to KENNETH LEE MARTINEZ, that in the commission of the crime of FORCIBLE RAPE as defined in PENAL CODE SECTION 261(A)(2), the Defendant personally used a dangerous or deadly weapon or firearm in the commission of the present offense in violation of Section 12022, 12022.3.

"PC 667.61(A)(E)(3) SPECIAL ALLEGATIONS
 SEX CRIMES

It is further alleged, within the meaning of Penal Code Section 667.61(a)(E)(3)(4), as to KENNETH LEE MARTINEZ, that in the commission of the crime of Forcible Rape as defined in Penal Code Section 261(a)(2), the Defendant personally inflicted great bodily injury on the victim [] to wit: JANE DOE or another person in the commission of the present offense in violation of Section 12022.53, 12022.7, or 12022.8; and the Defendant personally used a dangerous or deadly weapon or firearm in the commission of the present offense in violation of Section 12022, 12022.3.

"PC 288A(C) FORCIBLE ORAL COPULATION

COUNT: 009, for a further and separate cause of complaint, being a different offense from but connected in its commission with the charge set forth in Count 008, complainant further complains and says: On or about JUNE 15, 2002 TO JUNE 18, 2002 the crime of FORCIBLE ORAL COPULATION, in violation of Section 288a(c) of the Penal Code, a FELONY, was committed by KENNETH LEE MARTINEZ, who at the time and place last aforesaid, did willfully and unlawfully participate in an act of oral copulation with JANE DOE, and did accomplish said act against said victim's will by force, violence, duress, menace, and fear of immediate and unlawful bodily injury to said victim and to another. NOTICE: The above offense is a serious FELONY within the meaning of Penal Code Section 1192.7(c)(5). NOTICE: Conviction of this offense will require the court to order you to submit to a blood test for evidence of antibodies to the probable causative agent of Acquired Immune Deficiency (AIDS). Penal Code Section 1202.1. NOTICE: Conviction of this offense will require you to register pursuant to Penal Code Section 290. Willful failure to register is a crime.

"PC 12022.7(E) INFLICTION OF GREAT
 BODILY INJURY

It is further alleged that in the commission of the above offense the said defendant KENNETH LEE MARTINEZ, personally inflicted great bodily injury under circumstances involving domestic violence upon JANE DOE, within the meaning of Penal Code Section 12022.7(e) and also causing the above offense to be a serious felony within the meaning of Penal Code Section 1192.7(c)(8).

"PC 667.61(A)(D)(3) SPECIAL ALLEGATIONS
 SEX CRIMES

It is further alleged, within the meaning of Penal Code Section 667.61(a)(d)(3), as to KENNETH LEE MARTINEZ, [] that in the commission of the crime of Forcible Rape as defined in Penal Code Section 261(a)(2), the defendant inflicted torture on the victim, to wit: JANE DOE, as defined in Penal Code Section 206.

"PC 667.61(B)(E)(3) SPECIAL ALLEGATIONS
 SEX CRIMES

It is further alleged, within the meaning of Penal Code Section 667.61(b)(e)(3), as to KENNETH LEE MARTINEZ, [] that in the commission of the crime of Forcible Rape as defined in Penal Code Section 261(a)(2), the Defendant personally inflicted great bodily injury on the victim to wit: JANE DOE or another person in the commission of the present offense in violation of Section 12022.7, or 12022.8.

"PC 667.61(B)(E)(4) SPECIAL ALLEGATIONS
 SEX CRIMES

[I]t is further alleged, within the meaning of Penal Code Section 667.61(b)(e)(4), as to KENNETH LEE MARTINEZ, [] that in the commission of the crime of FORCIBLE ORAL COPULATION as defined in PENAL CODE SECTION 288A(C), the Defendant personally used a dangerous or deadly weapon or firearm in the commission of the present offense in violation of Section 12022, 12022.3.

"PC 667.61(A)(E)(3) SPECIAL ALLEGATIONS
 SEX CRIMES

It is further alleged, within the meaning of Penal Code Section 667.61(a)(E)(3)(4), as to KENNETH LEE MARTINEZ, that in the commission of the crime of Forcible Rape as defined in Penal Code Section 261(a)(2), the Defendant personally inflicted great bodily injury on the victim[,] to wit: JANE DOE or another person in the commission of the present offense in violation of Section 12022.53, 12022.7, or 12022.8; and the Defendant personally used a dangerous or deadly weapon or firearm in the commission of the present offense in violation of Section 12022, 12022.3.

"[Defendant was acquitted on count 10.]

"PC 422 CRIMINAL THREATS

COUNT: 011, for a further and separate cause of complaint, being a different offense from but connected in its commission with the charge set forth in Count 010, complainant further complains and says: On or about JUNE 15, 2002 TO JUNE 18, 2002 the crime of CRIMINAL THREATS, in violation of Section 422 of the Penal Code, a FELONY, was committed by KENNETH LEE MARTINEZ, who at the time and place last aforesaid, did willfully and unlawfully threaten to commit a crime which would result in death or great bodily injury to another, to-wit: JANE DOE, with the specific intent that the statement be taken as a threat. It is further alleged that the threatened crime, on its face and under the circumstances in which it was made, was so unequivocal, unconditional, immediate and specific as to convey to said victim a gravity of purpose and an immediate prospect of execution. It is further alleged that the said victim was reasonably in sustained fear of his or her safety and the safety of his or her immediate family.

"PC 136.1(C)(1) DISSUADING A WITNESS BY
 FORCE OR THREAT

COUNT: 012, for a further and separate cause of complaint, being a different offense from but connected in its commission with the charge set forth in Count 011, complainant further complains and says: On or about JUNE 15, 2002 TO JUNE 18, 2002 the crime of DISSUADING A WITNESS BY FORCE OR THREAT, in violation of Section 136.1(c)(1) of the Penal Code, a FELONY, was committed by KENNETH LEE MARTINEZ, who at the time and place last aforesaid, did willfully, knowingly, maliciously, and unlawfully prevent and dissuade JANE DOE, and attempt to prevent and dissuade said victim, a victim and witness of a crime, by means of force and threats of unlawful injury to the person and damage to the property of himself/herself and another from: MAKING A REPORT OF SUCH VICTIM-IZATION TO A PEACE OFFICER, STATE AND LOCAL LAW ENFORCE-MENT OFFICER, PROBATION, PAROLE, AND CORRECTIONAL OF-FICER, PROSECUTING AGENCY, AND JUDGE.

"PC 236 FALSE IMPRISONMENT BY VIOLENCE

COUNT: 013, for a further and separate cause of complaint, being a different offense from but connected in its commission with the charge set forth in Count 012, complainant further complains and says: On or about JUNE 15, 2002 TO JUNE 18, 2002 the crime of FALSE IMPRISONMENT BY VIOLENCE, in violation of Section 236 of the Penal Code, a FELONY, was

committed by KENNETH LEE MARTINEZ, who at the time and place last aforesaid, did willfully and unlawfully violate the personal liberty of JANE DOE, said violation being effected by violence, menace, fraud, and deceit."