Filed 10/28/16

# CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B260824 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA088533) |
| v. | |
| CHADWICK VERNON LEARNARD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Alan B. Honeycutt, Judge. Affirmed in part, reversed in part, and remanded with directions.

Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

---

\* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of the Factual Background and part I of the Discussion, pages 3–12.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, and Viet H. Nguyen, Deputy Attorney General, for Plaintiff and Respondent.

_____

Chadwick Vernon Learnard appeals from the judgment entered following a jury trial in which he was convicted of one count of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1), count 1) and one count of simple battery[2] (§ 242, count 5). The trial court found that appellant had suffered two prior qualifying convictions under the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), two prior serious felony convictions (§ 667, subd. (a)), and two prior prison terms (§ 667.5, subd. (b)). The court sentenced appellant to an aggregate term of 35 years to life in state prison.[3]

---

[1] Undesignated statutory references are to the Penal Code.

[2] The jury was unable to reach a verdict on count 2, assault by means likely to produce great bodily injury. (§ 245, subd. (a)(4).) The court found the jury was deadlocked and declared a mistrial as to that count.

[3] The sentence consisted of an indeterminate term of 25 years to life on count 1, plus two five-year enhancements for the two prior serious felony convictions. (§§ 667, subds. (a), (e)(2).) On count 5, the court sentenced appellant to 180 days in county jail with credit for time served.

We reverse the trial court's determination that appellant's 2002 conviction for aggravated assault constituted a serious felony conviction and hence a strike based on the court's reliance on judicial fact-finding beyond the elements of the prior conviction itself. Given that none of the documents in the record of the prior conviction distinguished between assault with a deadly weapon and assault by means likely to produce great bodily injury, the trial court's determination that the prior conviction constituted a serious felony is unsupported by substantial evidence. Accordingly, we remand the matter for resentencing. In all other respects, we affirm.

## FACTUAL BACKGROUND*

On October 1, 2013, about 3:00 p.m., Luisina Hare and her husband, Charles, drove to the Fantastic Cafe in Lomita to pick up lunch. Their six-month-old son was in the backseat of the car. As the Hares pulled into the restaurant's parking lot, they saw their friend Kari Lightfoot driving with her six-year-old son in the car. Luisina parked near the back door of the restaurant, and Lightfoot parked nearby leaving an empty parking space between the two vehicles. Sitting in their vehicles with the windows rolled down, the Hares chatted briefly with Lightfoot.

Charles got out of the car, and as he walked toward the restaurant, appellant emerged from the restaurant carrying a skateboard. Appellant yelled several times at Charles, " 'I heard you were talking shit.' " Charles looked up and saw appellant approaching rapidly. Holding the skateboard at shoulder height

---

* See footnote, *ante*, page 1.

3

by its "trucks,"[4] appellant struck a forceful blow to Charles's face with the end of the skateboard. Charles was able to turn his head so that the skateboard struck his left cheek and the outer part of his eye. The force of the blow knocked him into the front of his car and he fell to the ground. As appellant continued his attack, Charles curled up and covered his head with his arms.

Luisina got out of her car and tried to stop the assault on her husband by jumping on appellant's shoulder and throwing her arm around him. But appellant grabbed her face and shoved her to the ground, ripping off her shirt. While Luisina was on the ground appellant hit her a couple of times on her back with a heavy object or his hand.

Charles stood up and started punching appellant's head and body. Appellant fought back, and the two men traded blows. Luisina went to the driver's side of the car and tried to pop open the trunk to get something she could use to stop the fight. Appellant made a move toward the driver's side of the Hares' vehicle, and Charles put his hand on his pocket knife in case he needed to use it. At this point, appellant said, "Oh, oh, what, you got a gun?" He took a few steps backward, then turned and walked away with the skateboard.

Luisina called 911 and handed the phone to Charles, who reported the incident. Charles declined medical attention, telling the operator he only had a scratch on his face and was fine. But Charles actually suffered several minor injuries from the attack, including abrasions on both corners of his left eye, a cut on the bridge of his nose, a cut lip, a scratch on his back, and abrasions

---

[4] The "trucks" of a skateboard are like a car's axle: attached to the bottom of the skateboard, they hold the wheels in place.

4

on his upper chest, left knee, and left forearm. Luisina had an abrasion on her right knee, as well as bruises on her upper back, above her left eyebrow, and on her left arm and shoulder. None of Luisina's injuries was serious enough to require medical attention.

Shortly after the incident, sheriff's deputies found appellant in a nearby Laundromat hiding under a table and took him into custody. As Deputies Thomas Phillips and Stephen Capra were escorting appellant to their patrol car, Capra noticed a skateboard that was propped against a traffic barrier in front of the Laundromat. Aware that the victims had reported a skateboard being used in the attack, Capra picked it up, and appellant said, " 'Don't fucking lose my skateboard.' "

In the backseat of the patrol car, appellant became angry about being detained and started yelling profanities at the officers. Appellant was sweating profusely and turning red, and demanded to know why he was "getting in trouble for socking . . . up . . . a drug dealer." Claiming he was simply protecting his neighborhood, appellant declared, " 'Those people are dirty. They were selling drugs.' " Appellant called Capra a " 'beaner,' " a " 'punk-ass bitch,' " and a " 'child molester.' " Phillips described appellant's demeanor in the patrol car as "pretty amped up, belligerent." Appellant spat at Capra, hitting the Plexiglas shield between the front and rear seats of the patrol car.

At the station, appellant was placed in the booking cell, and his demeanor became increasingly erratic. He alternated between extreme anger and agitation to becoming emotional and slumping against the wall crying. He paced the cell, frequently punching his hand with his fist and slapping his hands against the walls and the glass door of the cell. He removed his shirt and

threw it on the floor. After filling out some paperwork, he threw the pen against the wall so forcefully that the pen broke. He ranted and raved, repeatedly yelling, "Why am I in trouble for socking this guy up, protecting my neighborhood?"

## DISCUSSION

### I. *Admission of evidence of appellant's postarrest conduct and demeanor*

Appellant contends the trial court abused its discretion in admitting irrelevant and unduly prejudicial evidence of his postarrest conduct and demeanor. We find no abuse of discretion, but in any event conclude that any error in admitting such evidence was harmless.

### *Relevant background*

Over strenuous defense objection, the trial court admitted a 22-minute video without audio, which showed appellant in the booking cell exhibiting extremely agitated and erratic behavior. The defense also objected to admission of evidence that appellant spat at Deputy Capra in the patrol car and that appellant called him a "beaner," a "punk-ass bitch," and a "child molester" while he was being transported to the police station.

The court did not review the video, but relied on the district attorney's description of it as showing appellant "punching and slamming his hands, both open and closed, against the booking cage, walls, and counter." The prosecutor further characterized appellant's behavior as "going off in the cell. At some point he is handed a clipboard and something to write on, and within about a minute he throws something at the cage and then starts punching the glass door." Defense counsel argued the tape was highly prejudicial and irrelevant, demonstrating only that appellant was angry about being in custody.

6

"Upon weighing the considerations under [Evidence Code section] 352," the trial court admitted the booking cell video, finding it to be relevant and not unduly prejudicial.[5] The court declared that the video appeared "to be highly probative of the demeanor of [appellant] at the time of the incident." The court concluded that appellant's actions in the patrol car and his demeanor in the booking cell helped to explain appellant's conduct and demeanor during the commission of a crime in which he was "alleged to have set upon" total strangers for no apparent reason.

### *No abuse of discretion occurred*

We start with the basic proposition that all relevant evidence is admissible, except as excluded by statute or the constitution. (Evid. Code, § 351; see also Cal. Const., art. I, § 28, subd. (d).) Relevant evidence is defined as evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) " 'The test of relevance is whether the evidence tends "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive.' " (*People v. Bivert* (2011) 52 Cal.4th 96, 116–117; *People v. Williams* (2008) 43 Cal.4th 584, 633–634.)

---

[5] Because the trial court did not independently review the video before it was shown to the jury, the court was not in a position to properly weigh the potential prejudicial effect of its contents. Although we agree with the trial court's ruling that the video was relevant and not unduly prejudicial based on our own review of the recording, we observe that it would have been far better practice for the trial court to conduct its 352 analysis on the basis of an independent review of the evidence.

Even if relevant, a trial court has broad discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352; *People v. Lee* (2011) 51 Cal.4th 620, 643.) We review the trial court's rulings on the admissibility of evidence, including those based on relevancy and Evidence Code section 352, for abuse of discretion. (*Lee*, at p. 643; *People v. Hamilton* (2009) 45 Cal.4th 863, 929–930 [" 'Our review on this issue is deferential' "].) The mere fact that reasonable people might disagree over the trial court's decision does not provide grounds for reversal. "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

Appellant argues that evidence of his postarrest demeanor—his conduct in the police car and the video depicting appellant in a violent rage and "going nuts in the booking cage"— was irrelevant to any issue before the jury, and the trial court abused its discretion in admitting it. To the contrary, evidence of appellant's postarrest conduct and demeanor was relevant to counter the defense theory by showing appellant's entire course of conduct, from his agitated pacing inside the restaurant before the assault[6] to his agitation and rage in the patrol car and booking cell immediately after the assault.

---

[6] Video from inside the restaurant showed appellant pacing back and forth moments before the unprovoked assault on Charles. Although the video was not available to be shown to the

8

The prosecution sought to introduce evidence of appellant's postarrest conduct and demeanor to contradict the defense theory that appellant was acting in self-defense and protecting his neighborhood from drug dealers when he committed an apparently senseless act of violence on a random stranger. Evidence of appellant's extreme agitation and erratic behavior toward police immediately after he attacked complete strangers with their infant at a restaurant was certainly relevant to rebut the defense and establish the material facts of intent and motive. Appellant's conduct in the police car was inconsistent with a person who had merely protected his neighborhood from drug dealers and acted in self-defense. Moreover, the video evidence from the booking cell within 30 minutes of the assault, combined with evidence of appellant's agitated state in the restaurant before the offense, tended to show a continuing course of conduct which contradicted the defense theory of the case.

Although motive is not an element of a crime, it makes the crime understandable and renders the inferences regarding defendant's intent more reasonable. (*People v. Riccardi* (2012) 54 Cal.4th 758, 815, overruled on other grounds in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.) " ' "[B]ecause a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect, and wide latitude is permitted in admitting evidence of its existence." ' " (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1168.)

---

jury, the investigating officer who had seen it testified that appellant "seemed a little agitated" just before he walked out of the rear door to the parking lot.

As part of a continuing course of conduct which started in the restaurant just before his encounter with the Hares, appellant's behavior immediately after the incident went a long way to explaining his conduct during the confrontation. The evidence was therefore relevant to proving a disputed fact that was of consequence to an important issue the jury was called upon to decide.

Appellant further argues that the 22-minute video showing "an extremely irate, irrational and violent" person was unduly prejudicial. We might agree if the video actually depicted such violence and unchecked rage. However, in our view, it does not. Instead, the video shows a clearly agitated individual who appears to be angry and upset about his situation. Appellant is cooperative as police remove his belt and he enters the booking cell. Appellant then becomes agitated, pacing back and forth, and punching his left hand with his right fist. He slaps the wall, the glass door, the window, and the counter with both hands multiple times. He removes his shirt, and repeatedly throws it, picks it up, and throws it again. Police hand him a clipboard with paper and a pen. Appellant is again cooperative as he appears to write on the paper and hand the clipboard back to police. Then he throws the pen violently against the window of the cell. Several times, appellant slumps against the wall, and stands or sits quietly with his head in his hands before resuming his agitated pacing.

Contrary to appellant's characterization, the video simply does not depict a violent individual in an uncontrolled rage, but rather, a person in a state of high emotion and agitation. Under the prosecution's theory, this behavior in the cell was part of a continuing course of conduct that helped explain the assault on a

stranger who happened to cross appellant's path. Accordingly, we conclude the video was relevant to a material issue and not unduly prejudicial. We cannot say that the trial court's admission of the evidence in this instance was so irrational or arbitrary that no reasonable person could agree with it. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.)

### *Any error was harmless*

Even were we to find the trial court abused its discretion in admitting the evidence of appellant's postarrest conduct and demeanor, reversal would not be warranted. "Absent fundamental unfairness, state law error in admitting evidence is subject to the traditional *Watson* test: The reviewing court must ask whether it is reasonably probable the verdict would have been more favorable to the defendant absent the error." (*People v. Partida* (2005) 37 Cal.4th 428, 439; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

We find no reasonable probability of a more favorable outcome had the trial court excluded the video evidence in this case. Three witnesses testified to appellant's unprovoked attack on Charles with a skateboard. The jury also heard the 911 call in which Charles reported appellant had hit him in the face with a skateboard. Although relatively minor, Charles's injuries were consistent with being struck by a skateboard. Several times, appellant admitted to "socking" Charles, and he acknowledged the skateboard Deputy Capra picked up outside the Laundromat belonged to him. Police found appellant hiding in a Laundromat near the restaurant after the attack. Moments before the assault, as he paced back and forth, appellant appeared agitated on the restaurant video. Despite appellant's claim that he was protecting his neighborhood from drug dealers and had acted in

11

self-defense, there was no evidence the Hares were selling drugs, and appellant suffered no injuries indicative of having had to defend himself.  In short, given the overwhelming demonstration of appellant's guilt, any error in admitting the evidence of appellant's postarrest conduct and demeanor was undeniably harmless.

## II. *The prior serious felony determination*

Appellant contends substantial evidence does not support the trial court's conclusion that his 2002 conviction for aggravated assault constituted a serious felony and qualified as a prior strike conviction under the Three Strikes law.  We agree.

### *Relevant background*

The information alleged two prior convictions under the Three Strikes law:  (1) a 2002 conviction for aggravated assault following a guilty plea (§ 245, subd. (a)(1)); and (2) a 2012 conviction for criminal threats (§ 422).  Appellant waived his right to a jury trial and admitted he had suffered the two prior felony convictions, while contending the assault conviction did not constitute a serious or violent felony, and thus did not qualify as a strike.  The trial court reviewed what it described as the "record of conviction" in the assault case, which included the abstract of judgment, the information, the transcript from the preliminary hearing, and the probation department's preconviction report.  The trial court did not have before it the transcript from appellant's plea colloquy in the case.

The notation in the abstract of judgment described the offense as a violation of section 245, subdivision (a)(1), "Assault w deadly wpn/GBI."  The information charged:  "On or about February 9, 2002, . . . the crime of *assault with deadly weapon, by means likely to produce GBI*, in violation of Penal Code section

12

245(a)(1), a Felony, was committed by [Defendant], who did willfully and unlawfully commit an assault . . . with a *deadly weapon, to wit, [a] baseball bat, and by means of force likely to produce great bodily injury*."  (Italics added.)

Defense counsel argued that because the information and the abstract referred to the offense as both an assault with a deadly weapon and an assault with force likely to produce great bodily injury, it was impossible to determine whether appellant had admitted an assault with a deadly weapon when he entered his plea.  Counsel further maintained that the testimony adduced at the preliminary hearing had no bearing on what facts, if any, appellant admitted as part of his guilty plea.  Based on appellant's record of conviction, counsel argued it was not possible to find beyond a reasonable doubt that appellant admitted use of a deadly weapon at the time of his plea.

The trial court determined the prior assault conviction qualified as a strike.  The court recognized that the reference in the abstract of judgment to both a deadly weapon and great bodily injury created some ambiguity, but noted that the information "set[] out clearly that a baseball bat was used in the assault under 245(a)(1)."  The court further declared that both the preliminary hearing transcript and the preconviction report showed that appellant had used a deadly weapon.

### *Former Penal Code section 245, subdivision (a)(1)*

When appellant pleaded guilty to aggravated assault in 2002, section 245, subdivision (a)(1) provided in relevant part: "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished . . . ."  Former section 245, subdivision (a)(1) thus

13

described alternative means of committing the same offense, aggravated assault, within the same subdivision, and a jury could convict without regard to whether the crime was committed by means of a deadly weapon or by force likely to produce great bodily injury.[7] (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1036–1037 [violation of section 245, subdivision (a)(1) required proof of two elements: "One, a person was assaulted, and two, the assault was committed by the use of a deadly weapon or instrument or by means of force likely to produce great bodily injury"]; *People v. Martinez* (2005) 125 Cal.App.4th 1035, 1043; *In re Mosley* (1970) 1 Cal.3d 913, 919, fn. 5 [section 245 "define[d] only one offense, to wit, 'assault upon the person of another with a deadly weapon or instrument *or* by any means of force likely to produce great bodily injury' "].)

Although use of a deadly weapon and great bodily injury were interchangeable for purposes of conviction under former section 245, subdivision (a)(1), under the Three Strikes law only assault with a deadly weapon constitutes a serious felony. (§§ 1192.7, subd. (c)(31), 667, subd. (d)(1), 1170.12, subd. (b)(1); *People v. Delgado* (2008) 43 Cal.4th 1059, 1065 (*Delgado*).) Accordingly, the mere fact of a conviction for aggravated assault under former section 245, subdivision (a)(1) would be insufficient to establish the prior conviction was a strike in any case in which

---

[7] In 2012, the Legislature amended section 245 by deleting the phrase "or by any means of force likely to produce great bodily injury" from subdivision (a)(1) and placing it in newly enacted subdivision (a)(4) (Stats. 2011, ch. 183, § 1), thereby separating the two ways in which an aggravated assault could occur.

the verdict or plea did not specify the precise means used to commit the offense.

### *Substantial evidence does not support the trial court's finding that the prior conviction was a serious felony*

The prosecution is required to prove each element of an alleged sentence enhancement beyond a reasonable doubt. (*Delgado, supra*, 43 Cal.4th at p. 1065; *People v. Miles* (2008) 43 Cal.4th 1074, 1082.)  Where, as here, the mere fact that a defendant was convicted under a particular statute does not establish the serious felony allegation, our Supreme Court has held that the sentencing court may examine "the record of the prior criminal proceeding to determine the nature or basis of the crime of which the defendant was convicted."  (*People v. McGee* (2006) 38 Cal.4th 682, 691 (*McGee*); *People v. Trujillo* (2006) 40 Cal.4th 165, 179; *Delgado*, at p. 1065.)

A plea of no contest admits the elements of the crime, but does not constitute an admission of any aggravating circumstances.  (*People v. French* (2008) 43 Cal.4th 36, 49.)  "[I]f the prior conviction was for an offense that can be committed in multiple ways, and the record of the conviction does not disclose how the offense was committed, a court must presume the conviction was for the least serious form of the offense.  [Citations.]  In such a case, if the statute under which the prior conviction occurred could be violated in a way that does not qualify for the alleged enhancement, the evidence is thus insufficient, and the People have failed in their burden."  (*Delgado, supra*, 43 Cal.4th at p. 1066.)

We review the record in the light most favorable to the judgment to determine whether it is supported by substantial

evidence. (*Delgado, supra*, 43 Cal.4th at p. 1067.) "In other words, we determine whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt." (*People v. Miles, supra*, 43 Cal.4th at p. 1083; *People v. Ledbetter* (2014) 222 Cal.App.4th 896, 900.)

The trial court was permitted to draw reasonable inferences from the records offered to prove appellant suffered a prior serious felony conviction. (*Delgado, supra*, 43 Cal.4th at p. 1066; *People v. Henley* (1999) 72 Cal.App.4th 555, 561.) But the court here went beyond reasonable inference when it actually weighed the evidence contained in those documents in order to make its own factual determination about the nature of the offense. In reaching its conclusion that the reference to a deadly weapon (a baseball bat) established the crime as a serious felony, the court simply disregarded references in both the information and the abstract of judgment to assault by means of force likely to produce great bodily injury. The court did the same with respect to the conduct described at the preliminary hearing. There, the victim testified that the defendant hit the victim's left shoulder as he struck the victim's car with a baseball bat. But the victim also testified that the defendant grabbed him with both hands and tried "to tear [him] out of the car." In concluding that the conduct described constituted an assault with a deadly weapon and thus a serious felony, the court again simply ignored evidence that established an assault with force likely to produce great bodily injury.

Because the evidence presented by the prosecution established appellant's prior conviction could have rested on use of a deadly weapon *or* force likely to produce great bodily injury,

it was insufficient to prove appellant guilty of a prior serious felony conviction beyond a reasonable doubt.[8] Without further evidence of the underlying circumstances, it must be presumed that appellant's conviction under former section 245, subdivision (a)(1) was for the least serious form of the offense, that is, assault by means of force likely to produce great bodily injury. (*Delgado*, *supra*, 43 Cal.4th at p. 1066.)

The trial court's finding that appellant's prior conviction for aggravated assault constituted a serious felony lacked substantial evidentiary support. We therefore conclude the court erred in imposing sentence enhancements under section 667,

---

[8] The preconviction report also fails to provide substantial evidence that the prior conviction involved use of a deadly weapon. Citing the police report as its source, the preconviction report sets forth only the defendant's assault on the victim with a baseball bat. But there is no way to determine whether the police report itself recounted other conduct that was simply omitted from the preconviction report. And there is no indication that the facts recounted in the preconviction report formed the factual basis for appellant's plea. In the absence of any evidence that appellant stipulated to or even acknowledged the facts as set forth in the preconviction report in entering his plea, this document has no relevance in determining the nature or basis of the crime of which appellant was actually *convicted*. (See, e.g., *McGee*, *supra*, 38 Cal.4th at p. 706 [purpose of examination of record of earlier criminal proceeding is "to ascertain whether that record reveals whether the conviction realistically may have been based on conduct that would not constitute a serious felony"]; *People v. Denard* (2015) 242 Cal.App.4th 1012, 1028, 1029.)

subdivision (a) and the Three Strikes law.**9**  In light of our decision on substantial evidence grounds, we need not address appellant's constitutional challenge to the sentence.

---

**9** Although "the double jeopardy clause does not bar retrial of a prior conviction allegation after an appellate finding of evidentiary insufficiency" (*Monge v. California* (1998) 524 U.S. 721, 734; *People v. Seel* (2004) 34 Cal.4th 535, 541), retrial of the prior conviction allegation in this case is not warranted.  In considering whether a prior conviction is serious, the court's inquiry is limited to "a legal determination of the nature of defendant's *prior convictions* as established by the record of the prior criminal proceedings."  (*McGee, supra*, 38 Cal.4th at p. 702.) Accordingly, " 'the trier of fact may look to the entire record of the conviction' but '*no further*.' " (*People v. Kelii* (1999) 21 Cal.4th 452, 456–457.)  The prosecution may not call witnesses to testify about the facts of the prior offense, nor may the trial court consider evidence outside of the record of conviction to make findings about the defendant's earlier conduct.  (*McGee*, at pp. 694, 706.)  Here, after presenting all available documents from the record of conviction the prosecution failed to carry its burden of proving beyond a reasonable doubt that appellant's prior conviction should qualify as a strike.  There is no reason to conclude that another trial on the issue would produce a different result. (Cf. *People v. Roberts* (2011) 195 Cal.App.4th 1106, 1133 [insufficient evidence to support strike finding does not preclude retrial of strike allegation; "prosecution may present additional evidence that is included within 'the entire record of the conviction' to establish that the [prior] conviction constituted a strike"].)

**DISPOSITION**

The trial court's determination that the 2002 conviction for assault with a deadly weapon or by means likely to produce great bodily injury constituted a prior serious felony conviction and a strike is reversed. The cause is remanded for resentencing. In all other respects the judgment is affirmed.

CERTIFIED FOR PARTIAL PUBLICATION.


LUI, J.

We concur:


CHANEY, Acting P. J.


JOHNSON, J.