[No. C055549. Third Dist. Sept. 23, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH LEE MARTINEZ, Defendant and Appellant.

COUNSEL

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Christina Hitomi, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**MORRISON, Acting P. J.**—Defendant was convicted of torture, rape, assault and other crimes after a horrific three-day ordeal in which he repeatedly hit and kicked, tried to burn, and sexually assaulted his girlfriend. This court affirmed the judgment, which included a sentence of 54 years eight months to life, in *People v. Martinez* (2005) 125 Cal.App.4th 1035 [23 Cal.Rptr.3d 508] (*Martinez*). Defendant appeals from the denial of his motion for a "New Sentence." He contends the trial court violated his Sixth Amendment right to trial by jury by imposing upper term and consecutive sentences based on factors not found by a jury. We find no error. Defendant had no right to a jury trial on the factors used to impose consecutive sentences and the trial court's selection of the upper term on stayed counts is supported by at least one aggravating factor that the jury would have found true beyond a reasonable doubt.

### FACTUAL AND PROCEDURAL BACKGROUND

We take the facts of the offense from our prior opinion:

"On June 8, 2002, R., the victim, and defendant, her live-in boyfriend, got into a physical fight at his workplace. Both were arrested and jailed. R. bailed out that day, but defendant spent four days in jail.

"When released from jail, defendant went back to the home of R. and her 12-year-old son in Stockton. However, on June 14, defendant learned that the fight with R. at his workplace had cost him his job. Instead of going home, he went to a friend's house in Thornton. Early the next day, defendant called R. to ask her to come pick him up.

"After R. got there, defendant burst out of a parked van, grabbed her by the hair, and dragged her into the van. Keeping her trapped inside, he accused her of making him lose his job, vandalizing his vehicle, and stealing his briefcase. He struck her with a chain on the head, back, and shoulders and kicked her repeatedly with steel-toed boots.

"Later in the day, defendant drove with R. back to her house. When he fell asleep, she left to look for her missing wallet. She did not report defendant to the police at that point because she feared for the safety of her son if she did so, and because the police had sided with defendant over her in the June 8 incident. Furthermore, defendant had disconnected the telephones in the house.

"From Sunday, June 16, to Tuesday, June 18, defendant held R. hostage and beat her repeatedly, at different times using his fists, his steel-toed boots, a star-shaped tire iron, a flashlight, and a metal nail puller. He also raped her and forced her to orally copulate him three or four times. Throughout this period, he continued to berate her about his lost job; he also threatened to kill her and her family if she told anyone about what he was doing to her.

"On June 17, R. went across the street to her neighbor M.G.'s house to get hamburger meat. M.G. noticed R.'s face was bruised and asked her to stay, but R. said she could not because defendant would get mad at her. M.G. urged R. to call the police, but R. said she did not want to get M.G. involved.

"On the evening of June 18, defendant twice poured rubbing alcohol over R. while they were in the bathroom, then set pieces of toilet paper alight and threw them at her. He told her he wanted her to die and to see her burn in hell.

"Failing to set R. on fire the first time, defendant poured a bottle of hydrogen peroxide over her and told her to shower. She could not undress or operate the shower because her hands were broken. Defendant forced her in and poured shampoo on her head. When he put her hands on her head, she screamed in extreme pain. He ordered her to dress and put on makeup, but she could not. He kept on hitting and kicking her.

"Defendant then repeated the process, again trying and failing to set R. on fire, then forcing her into the shower. He pulled her up by the arms, which had been broken in the course of his assaults. He again demanded sex. R. felt sure she would die if she did not escape.

"When defendant left the bathroom for a moment, R. ran naked out of the bathroom and across the street to M.G.'s house, where she was able to call 911.

"The emergency room doctor observed that R. was bruised all over. She had significant swelling and broken skin over her right temple, deeply bruised

forearms, and a bony deformity in one arm. X-rays revealed both forearms, a rib, and a leg bone were broken; the right forearm had multiple fractures. R.'s lesions looked like the result of being beaten with a crowbar or tire iron, as she told the doctor she was." (*Martinez, supra,* 125 Cal.App.4th at pp. 1039–1041, fns. omitted.)

"A jury convicted defendant Kenneth Lee Martinez of torture (count 1; Pen. Code, § 206; undesignated section references are to the Penal Code); five counts of assault by means of force likely to produce great bodily injury or with a deadly weapon (counts 2–6; § 245, subd. (a)(1)); corporal injury to a cohabitant (count 7; § 273.5); forcible rape (count 8; § 261, subd. (a)(2)); forcible oral copulation (count 9; § 288a, subd. (c)); criminal threats (count 11; § 422); dissuading a witness by force or threat (count 12; § 136.1, subd. (c)(1)); and false imprisonment by violence (count 13; § 236). The jury also found as to counts 7 through 9 that defendant personally inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)), and as to counts 8 and 9 that defendant inflicted torture and great bodily injury upon the victim (§ 667.61, subds. (a), (d)(3); *id.,* subds. (b), (e)(3)), personally used a deadly weapon, and personally inflicted great bodily injury (§ 667.61, subds.(b), (e)(4); *id.,* subds. (a), (e)(3))." (*Martinez, supra,* 125 Cal.App.4th at p. 1038, fn. omitted.)

The report of the probation department noted that defendant had two prior misdemeanor convictions for drunk driving. The report set forth numerous factors in aggravation under rule 4.421 of the California Rules of Court: (1) the crimes involved great violence and bodily harm, disclosing a high degree of cruelty, viciousness or callousness; (2) defendant was armed with a chain, flashlight, crowbar, and tire iron; (3) the victim was particularly vulnerable; (4) the manner in which the crimes were carried out indicated planning; (5) defendant took advantage of a position of trust; (6) defendant engaged in violent conduct indicating a serious danger to society; (7) defendant was on probation; (8) defendant's performance on probation was unsatisfactory; (9) defendant's pattern of drinking and driving posed a danger to society; and (10) defendant had a pattern of substance abuse and had failed to deal with it.

The People requested the maximum sentence for defendant. "[T]his was a savage, brutal, and callous crime of selfishness and revenge." The prosecutor believed that if the victim had not fled, she would have ended up dead.

The court sentenced defendant to a total term of 54 years eight months to life in state prison. Before sentencing, the court stated, "this is as bad as it gets without somebody being killed as far as I'm concerned." The court imposed 25 years to life on count 8, the principal term, pursuant to the "one strike" law (Pen. Code, § 667.61; undesignated section references are to the Penal Code), and imposed the same term on the enhancements to count 8 but

stayed that term under section 654. The court then imposed a consecutive sentence of 25 years to life on count 9, finding that the offenses charged in counts 8 and 9 occurred on separate occasions. The court further imposed consecutive sentences of one year (one-third the middle term) on count 2, three years (the middle term) on count 12, and eight months (one-third the middle term) on count 13. Finally, the court imposed a life sentence on count 1 and upper terms on the remaining counts and enhancements (counts 3–6, four years; count 7, four years; the enhancement to count 7, five years; count 11, three years), but stayed these sentences under section 654.

Defendant appealed and this court affirmed. (*Martinez, supra,* 125 Cal.App.4th at p. 1050.) Defendant contended his sentence violated *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*). In the unpublished portion of the opinion, we rejected that contention of error. (*Martinez, supra,* at p. 1039.)

The California Supreme Court denied defendant's petition for review "without prejudice to any relief to which defendant might be entitled after this court determines in *People v. Black,* S126182, and *People v. Towne,* S125677, the effect of *Blakely v. Washington* (2004) 542 U.S. [296] [159 L.Ed.2d 403, 124 S.Ct. 2531], on California law." (*Martinez, supra,* 125 Cal.App.4th 1035, review den. Apr. 20, 2005, S131668.)

In 2007, defendant filed a motion for a "New Sentence." The motion stated: "This Court sentenced petitioner 29 yr. 8 mo. contrary to the recent ruling of The United States Supreme Court and another life sentence . . . . Therefore, petitioner must be resentenced accordingly."

The trial court denied the motion, noting "*Cunningham v. California* does not affect your sentence."

Defendant appealed from this order.

## DISCUSSION

On appeal, defendant incorporates by reference the arguments contained in his supplemental brief on *Blakely* in his original appeal. In that brief, he contends the trial court's sentencing violated *Blakely, supra,* 542 U.S. 296 [159 L.Ed.2d 403] in three respects: (1) by imposing consecutive life sentences on counts 8 and 9; (2) by imposing consecutive determinate sentences on counts 2, 12, and 13; and (3) by imposing aggravated consecutive terms on counts 3 through 7 and 11 and the enhancement on count 7, which sentences were then stayed under section 654. For the reasons that follow, we reject defendant's contentions.

*Consecutive Life Terms Under Section 667.61: Counts 8 and 9*

On counts 8 and 9, rape and oral copulation, the jury found true allegations that defendant inflicted torture, inflicted great bodily harm and used a weapon, subjecting defendant to life terms under section 667.61. The trial court sentenced defendant to a life term on each count and ordered these life sentences to run consecutively. It gave as reasons for the sentencing choices that the offenses occurred on separate occasions.[1]

At the time of the offenses, section 667.61, subdivision (g) (hereafter section 667.61(g)) provided: "The term specified in subdivision (a) or (b) shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion." (Stats. 1998, ch. 936, § 9.) Thus, the finding of separate occasions was necessary to impose two life sentences.

Defendant contends imposition of consecutive life terms based on the trial court's finding of separate occasions violated his Sixth Amendment right to trial by jury.

In *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [147 L.Ed.2d 435, 455, 120 S.Ct. 2348], the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely*, the Supreme Court applied the rule of *Apprendi* to a state court sentence. The court explained, "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" (*Blakely, supra,* 542 U.S. at p. 303 [159 L.Ed.2d at p. 413].)

In *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856], the Supreme Court applied *Apprendi* and *Blakely* to California's determinate sentencing scheme. The court held that California's sentencing law violated "a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments" because it "assigns to the trial judge, not to the jury, authority to find the facts that expose a defendant to an

---

[1] The amended complaint alleged both offenses were committed "on or about June 15, 2002 to June 18, 2002." The trial court struggled with whether there were separate occasions, eventually finding the two crimes "took place in different parts of the house at different times . . . they involve two acts of dominance and control, and frankly, humiliation over the victim." In an unpublished portion of *Martinez*, we found substantial evidence supported the trial court's finding.

elevated 'upper term' sentence." (*Id.* at p. 274 [166 L.Ed.2d at p. 864], overruling on this point *People v. Black* (2005) 35 Cal.4th 1238 [29 Cal.Rptr.3d 740, 113 P.3d 534], vacated in *Black v. California* (2007) 549 U.S. 1190 [167 L.Ed.2d 36, 127 S.Ct. 1210].)

Here, the issue is not aggravated terms as in *Cunningham*, but full-term consecutive sentences. *Cunningham* did not address the issue of consecutive sentences, but the California Supreme Court did in *People v. Black* (2007) 41 Cal.4th 799 [62 Cal.Rptr.3d 569, 161 P.3d 1130] (*Black II*). *Black II* held, "imposition of consecutive terms under section 669 does not implicate a defendant's Sixth Amendment rights." (*Id.* at p. 821.) The court explained that *Apprendi* and *Blakely* treated the crime together with the fact that is the prerequisite to eligibility for a greater sentence as the functional equivalent of a greater crime. These decisions were intended to protect the historic right to a jury trial on all elements of an offense. Nothing in *Apprendi* or *Blakely* suggests they apply to factual findings that are not the functional equivalent of an element of a crime. (*Black II*, *supra*, at p. 821.)

■ *Cunningham* did not alter this conclusion. "The determination whether two or more sentences should be served [consecutively] is a 'sentencing decision[] made by the judge after the jury has made the factual findings necessary to subject the defendant to the statutory maximum sentence on each offense' and does not 'implicate[] the defendant's right to a jury trial on facts that are the functional equivalent of elements of an offense.' [Citation.]" (*Black II*, *supra*, at p. 823.)

■ Here, the trial court's finding of separate occasions supported both imposing indeterminate terms under section 667.61 and running those terms consecutively. *Black II*, *supra*, 41 Cal.4th 799 did not address whether *Apprendi* and *Blakely* apply to a trial court's determination of whether multiple sex offenses occurred on a single occasion for purposes of section 667.61(g). We find, however, that *Black II*'s analysis with regard to consecutive sentences applies here as well.

In *Black II*, the court emphasized that *Apprendi* and *Blakely* protect a defendant's historical right to a jury trial on all elements of the crime. (*Black II*, *supra*, 41 Cal.4th at p. 821.) There is no right to a jury trial on factual determinations that do not serve as the "functional equivalent" of an element of a crime. (*Ibid.*) Here, the jury made the factual findings necessary to support imposition of a life sentence under section 667.61; the jury found defendant inflicted torture and great bodily injury and personally used a deadly weapon. (§ 667.61, subds. (d)(3), (e)(3), (4).) The court's finding that multiple life sentences could be imposed because the sexual assaults occurred on separate occasions is similar to the factors a court may consider in deciding whether to impose consecutive sentences where a defendant has been convicted of multiple felony offenses. The result in each case is the

same: to sentence the defendant fully for each crime based on the elements found by the jury. Consequently, we conclude the trial court's decision to impose multiple sentences under section 667.61(g) did not violate defendant's constitutional rights.

Nor does the decision to run the indeterminate sentences consecutively raise constitutional problems. First, as explained above, the decision to run sentences consecutively is not the functional equivalent of a decision on an element of the crime and so does not trigger the right to a jury trial. Further, defendant could have been sentenced to consecutive sentences without the separate occasion finding. While the factual determination of separate occasions made defendant eligible for mandatory consecutive sentences under section 667.6, subdivision (d), the court could have imposed consecutive sentences without a separate occasion finding under subdivision (c) of section 667.6. As *Black II* makes clear, judicial factfinding in sentencing " 'is *only unconstitutional when that finding raises the sentence beyond the sentence that could have been lawfully imposed by reference to facts found by the jury or admitted by the defendant.*' [Citation.] The issue to be determined in each case is whether the trial court's factfinding increased the sentence that otherwise *could* have been imposed, not whether it raised the sentence above that which otherwise *would* have been imposed." (*Black II, supra,* 41 Cal.4th at p. 815, fn. omitted.)

### Consecutive Sentences on the Nonsex Offenses: Counts 2, 12, and 13

Defendant also challenges the consecutive sentences on counts 2, 12, and 13. These sentences were ordered to run consecutively under section 669. There was no right to a jury trial on facts used to justify these consecutive sentences. (*Black II, supra,* 41 Cal.4th at pp. 820–823.)

### Upper Terms on Stayed Counts 3 Through 7 and 11

Finally, defendant challenges the aggravated sentences on counts 3 through 7 and 11, and the aggravated enhancement on count 7. All of these sentences were stayed pursuant to section 654. Counts 3 through 6 were assaults; count 7 was corporal injury to a cohabitant and count 11 was criminal threats. The trial court did not give specific reasons for the upper terms other than its opening statement that based on 20 years' experience in the criminal justice system, "this is as bad as it gets without somebody being killed . . . ."[2] We construe this statement to mean the trial court relied on the aggravating factor that "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." (Cal. Rules of Court, rule 4.421(a)(1).)

---

[2] As to count 11, criminal threats, the court noted the threats—"Die, Bitch" and "I could kill you and dump your body where no one would find it"—were how murder-suicide happen. The court found the threats incidental to the crime of torture.

 While this aggravating factor does not fall within the prior conviction exception of *Apprendi*, the failure to submit it to the jury is subject to harmless error analysis. If we conclude "beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury, the Sixth Amendment error properly may be found harmless." (*People v. Sandoval* (2007) 41 Cal.4th 825, 839 [62 Cal.Rptr.3d 588, 161 P.3d 1146] (*Sandoval*).)

We recognize that it is often difficult to reach this conclusion as to somewhat vague aggravating factors that were not fully explored at trial. (See *Sandoval, supra,* 41 Cal.4th at pp. 839–840.) In this case, however, we find no difficulty in concluding the jury would have found defendant's crimes involved such great violence and bodily harm as to disclose a high degree of cruelty, viciousness, or callousness.

Defendant engaged in a prolonged vicious attack on the victim, repeatedly hitting and kicking her. Her injuries were significant. The emergency room physician who treated the victim testified, "The injuries I saw looked like she had the hell beat out of her." The victim had bruises "pretty much everywhere" and was in a lot of pain. The skin over her right temple was broken. Both of her arms were broken; her left arm had multiple fracture lines and a bony deformity. In addition, she had a broken leg and a broken rib. The lesions indicated "she had been beaten very badly."

This evidence supporting a finding of great violence and bodily harm disclosing cruelty, viciousness, or callousness is both objective and compelling. The failure to submit aggravating factors to the jury was harmless beyond a reasonable doubt. (*Sandoval, supra,* 41 Cal.4th at p. 837.)

## DISPOSITION

The judgment is affirmed.

Hull, J., and Butz, J., concurred.

On October 22, 2008, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied December 10, 2008, S167946.