Filed 7/11/22  P. v. Tooker CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CHARLES TOOKER,<br><br>        Defendant and Appellant. | A163332<br><br>(Marin County<br>Super. Ct. No. SC197709A) |

In 2018, a jury convicted defendant Charles Tooker of attempted murder, criminal threats, and other crimes after he brutally attacked and stabbed his ex-girlfriend, M.A.  The following year, this court affirmed the judgment. (*People v. Tooker* (Dec. 9, 2019, A154181) [nonpub. opn.].)  In doing so, we concluded no remand was necessary for the trial court to consider whether Tooker was eligible for mental health diversion under newly enacted Penal Code[1] section 1001.36.  After granting his petition for review on this issue, the California Supreme Court remanded the case for reconsideration in light of *People v. Frahs* (2020) 9 Cal.5th 618, 624–625, which held that section 1001.36 applies retroactively to all defendants whose judgments were not yet final at the time the statute took effect.

---

[1] All further statutory references are to the Penal Code.

1

We then issued a new opinion in which we conditionally reversed the judgment and remanded for the trial court to consider whether Tooker was eligible for relief under section 1001.36. (*People v. Tooker* (Oct. 13, 2020, A154181) [nonpub. opn.].)[2] On remand, the trial court denied relief on the basis that Tooker posed an unreasonable risk of danger to public safety if treated in the community under section 1001.36, subdivision (b)(1)(F) (section 1001.36(b)(1)(F)), and was unsuitable for diversion. Under section 1001.36(b)(1)(F), the unreasonable risk is that the defendant will commit one of a list of violent felonies known as "super strikes." (§§ 1001.36(b)(1)(F), 1170.18, subd. (c); see *People v. Jefferson* (2016) 1 Cal.App.5th 235, 242; § 667, subd. (e)(2)(C)(iv).)

Tooker now appeals from the order denying diversion, claiming the trial court abused its discretion by concluding he posed an unreasonable risk of danger and denying him a continuance to obtain further evidence. He also claims he is entitled to a new sentencing hearing under two other new laws: Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill No. 567), which amended the determinate sentencing law to alter a trial court's discretion to choose the lower, middle, or upper term, and Assembly Bill No. 518 (2021–2022 Reg. Sess.) (Assembly Bill No. 518), which gives a trial court discretion to choose which term to impose for an act punishable in different ways under section 654. We conclude that the court did not err by denying diversion and that a remand for resentencing is unnecessary. Therefore, we affirm.

---

[2] We grant Tooker's unopposed request for judicial notice of the record in his prior appeal.

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

### A.    *The Proceedings Leading to Tooker's First Appeal*

The facts underlying Tooker's convictions are recited in our October 2020 opinion. To summarize, Tooker committed several acts of domestic violence against M.A. while they were dating. After the relationship ended in 2013, Tooker began stalking her, and she obtained a restraining order against him. Around the same time the relationship ended, Tooker sustained a traumatic brain injury.

In June 2016, Tooker went to M.A.'s house with a gun, in violation of the restraining order. He entered her backyard, where she was gardening, displayed the gun, and told her he was going to kill her. M.A., who was holding pruning shears, attempted to escape over the yard's back gate. Tooker pulled her down, slammed her head into the ground, and, after a struggle, stabbed her with the pruning shears eight times in the back of her neck and head. He then began strangling her with his hands.

Bystanders heard M.A. screaming for help, and two men entered her yard and were able to subdue Tooker. Tooker's gun was located by the fence. M.A. was hospitalized for her injuries, which included stab wounds, bruising, and a head cut that required stitches. Tooker was arrested and taken to jail. Evidence was presented that he later arranged to pay another inmate to threaten and possibly kill M.A. to prevent her from testifying at trial.

Tooker, who testified in his own defense, said he experienced serious problems after his brain injury and became homeless. He stopped at M.A.'s house for "closure," supposedly on his way to ride his bicycle to Oregon, and he claimed that he could not remember most of what happened during the

3

attack. He also denied conspiring with the other inmate to prevent M.A. from testifying.

A psychiatrist testified for the defense that medical records showed Tooker "suffered a skull fracture and a large subdural hematoma, traumatic brain injury" after being assaulted in 2013. The records also showed that even after undergoing surgery and rehabilitation therapy, Tooker experienced ongoing issues typical of those with a traumatic brain injury, including personality changes, memory deficits, and problems with impulse control and judgment.

The jury convicted Tooker of felony counts of attempted murder, criminal threats, assault with a deadly weapon (pruning shears), assault by means likely to cause great bodily injury (GBI) (strangulation), and corporal injury on a former dating partner, and a misdemeanor count of violation of a domestic relations court order.[3] It also found true, as to the convictions for attempted murder, strangulation-based assault, and corporal injury, the allegation that Tooker personally inflicted GBI under circumstances involving domestic violence, and, as to the criminal-threats offense, the allegation that he personally used a firearm.[4] The jury was unable to find true the allegations that Tooker personally used a firearm during the attempted murder and the corporal-injury offense or that he personally inflicted GBI under circumstances involving domestic violence during the

---

[3] The convictions were under sections 187, subdivision (a), and 664 (attempted murder), 422 (criminal threats), 245, subdivision (a)(1) (assault with deadly weapon) and (4) (assault by means likely to cause GBI), 273.5, subdivision (a) (corporal injury on dating partner), and 273.6, subdivision (a) (violation of court order).

[4] The GBI allegations were found true under section 12022.7, subdivision (e)(1), and the personal-use allegation was found true under section 12022.5, subdivision (a).

4

assault with the pruning shears. Finally, it found not true the allegation that the attempted murder was deliberate and premeditated.[5]

In April 2018, the trial court sentenced Tooker to 16 years in prison, composed of the aggravated term of nine years for attempted murder and consecutive terms of five years for the GBI enhancement to attempted murder, eight months for criminal threats, and 16 months for the firearm enhancement to criminal threats. Four-year aggravated terms for both assault convictions and the corporal-injury conviction were imposed and stayed. Tooker was also sentenced to a consecutive term of one year in county jail for the misdemeanor.

### B. *The Proceedings Leading to This Appeal*

After we conditionally reversed the judgment and remanded the matter in 2020, the trial court appointed counsel to represent Tooker for proceedings under section 1001.36. Tooker then filed a request for a hearing, arguing he had made a prima facie showing of eligibility for diversion. As relevant here, he claimed he did not pose an unreasonable risk of danger to public safety because he had never been charged with or convicted of a super strike. The prosecution opposed the request, arguing "[t]here [was] every indication based on [Tooker's] prior criminal history, conduct that resulted in the attempted murder conviction in this case, and . . . attempts to arrange for [M.A.'s] murder from custody . . . that [he] would commit at least one . . . 'super strike.' " The prosecution also argued that "regardless of whether the

---

[5] The unresolved and rejected allegations were made under section 12022.7, subdivision (e)(1) (GBI), sections 12022.5, subdivision (a), and 12022.53, subdivision (b) (personal use of firearm), and section 664, subdivision (a) (premeditation). The enhancements on which the jury hung were dismissed on the prosecution's motion.

minimum requirements [for diversion] have been met," the court could proceed to the second stage of the analysis and find that Tooker was not suitable for diversion.

In July 2021, the trial court held a hearing on Tooker's application for diversion, focused on whether Tooker had made a prima facie showing of eligibility for relief. After the parties argued, the court scheduled another hearing for the following month to permit it to consider the matter further.

At the outset of the second hearing, the trial court offered Tooker's counsel the opportunity to present any further evidence counsel wished to be considered. Counsel responded that he wanted the opportunity to present newly obtained prison medical records and to obtain expert testimony, particularly on the topic of treatment. The prosecutor objected to a continuance, arguing the additional evidence was of limited relevance to showing Tooker did not pose an unreasonable risk of danger. After further discussion, the court denied the continuance, finding that Tooker's offer of proof would not impact its ruling.

The trial court then "summarily denied" Tooker's request for mental health diversion. The court explained its view that Tooker was required to make a prima facie showing not only that he met all six requirements for eligibility for diversion but also that he was suitable for diversion. The court stated it was "not satisfied, even at . . . this prima facie stage, . . . that [Tooker] will not pose an unreasonable risk of danger to public safety . . . if treated in the community" under section 1001.36(b)(1)(F). The court described Tooker's "extensive history of violence," from violent incidents with strangers, to previous assaults on M.A., to the incident at issue. The court pointed out that not only had Tooker been convicted of a super strike— attempted murder—there was also "compelling evidence at the trial that [he]

6

may have committed another super strike, and that was solicitation to commit murder."

The trial court also denied relief on the basis that Tooker and his offenses were not suitable for diversion, explaining, "[G]iven [his] history of domestic violence in the context of this very serious case where . . . [M.A.] would have been murdered had she not been saved by good Samaritans . . . , I'm finding that this type of pattern of domestic violence, lack of commitment or adherence to a [c]ourt order, clear obsession, anger, and jealousy, [establish] that [neither he] . . . nor these offenses, as a matter of discretion, are . . . suitable for mental health diversion."[6]

## II.
### DISCUSSION

*A. The Trial Court Did Not Abuse Its Discretion in Denying Tooker's Request for Mental Health Diversion or His Request for a Continuance.*

Tooker claims the trial court abused its discretion by concluding he was ineligible for relief because he posed an unreasonable risk of committing a super strike. He also claims the court abused its discretion by denying him a continuance to present more evidence. We are not persuaded on either count.

#### 1. General legal standards

Shortly after Tooker was sentenced, the Legislature enacted Assembly Bill No. 1810 (2017–2018 Reg. Sess.), which created a pretrial mental health diversion program by adding section 1001.36 to the Penal Code. (Stats. 2018, ch. 34, § 24.) Under the statute, "[p]retrial diversion may be granted" if a defendant has a covered mental disorder and meets several other criteria,

---

[6] Our record does not reflect that the trial court reinstated the judgment after denying diversion, as our prior opinion directed. Therefore, we affirm the order denying diversion and remand for the court to reinstate the judgment if it has not already done so.

7

including not posing an unreasonable risk of danger to public safety.[7] (§ 1001.36, subd. (b)(1).) If a defendant performs "satisfactorily" on diversion, the charges are dismissed, and "the arrest upon which the diversion was based shall be deemed never to have occurred." (§ 1001.36, subd. (e).)

Subsequently, Senate Bill No. 215 (2017–2018 Reg. Sess.) amended section 1001.36 to provide that defendants charged with certain offenses, including murder, are ineligible for diversion. (Stats. 2018, ch. 1005, § 1; § 1001.36, subd. (b)(2).) Senate Bill No. 215 also added the following provision: "At any stage of the proceedings, the court may require the defendant to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion. The hearing on the prima facie showing shall be informal and may proceed on offers of proof, reliable hearsay, and argument of counsel. If a prima facie showing is not made, the court may summarily deny the request for diversion or grant any other relief as may be deemed appropriate." (§ 1001.36, subd. (b)(3); Stats. 2018, ch. 1005, § 1.)

Thus, a trial court evaluating whether to grant diversion engages in a two-step analysis. First, the court determines whether the defendant meets the six statutory criteria and is therefore eligible for diversion. (§ 1001.36, subds. (b)(1), (3); *People v. Oneal* (2021) 64 Cal.App.5th 581, 588.) We will refer to this as an eligibility determination. Second, if the defendant meets all the statutory criteria, the court decides whether to exercise its discretion to grant diversion. (*Oneal*, at p. 588; *People v. Moine* (2021) 62 Cal.App.5th

---

[7] Although section 1001.36 refers to "pretrial diversion," *Frahs* held that the statute is retroactive and applies to defendants whose judgments were not yet final when it took effect. (*People v. Frahs, supra*, 9 Cal.5th at p. 624.)

440, 448 (*Moine*); see § 1001.36, subds. (a), (b)(1) [court "may" grant diversion if statutory criteria met].) We will refer to this as a suitability determination.

An eligibility determination premised on a defendant's unreasonable risk of danger to public safety is reviewed for an abuse of discretion. (*Moine, supra*, 62 Cal.App.5th at pp. 448–449.) We apply the same standard of review to a suitability determination. (See *People v. Oneal, supra*, 64 Cal.App.5th at p. 588; *Moine*, at p. 448.) "A court abuses its discretion when its decision exceeds the bounds of reason or is so irrational or arbitrary that no reasonable person could agree with it." (*Oneal*, at p. 588.) This standard is met if the decision is based "on express or implied factual findings that are not supported by substantial evidence." (*Moine*, at p. 449.)

> 2. The trial court did not abuse its discretion by finding that Tooker posed an unreasonable risk of danger.

Tooker claims the record does not support the trial court's conclusion that he posed an unreasonable risk of danger to public safety, "[g]iven [his] lack of a prior history of violent felony convictions, the unique circumstances of the charged offenses[,] and [his] mental state at the time of the crimes." We are not persuaded.

To begin with, we could affirm the denial of mental health diversion based solely on the trial court's suitability determination, which Tooker does not challenge. As discussed above, even if a defendant meets the six statutory criteria for eligibility, a trial court may still exercise its discretion to deny diversion. And under the plain language of section 1001.36, a court may summarily deny diversion if the defendant fails "to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion *and* that the defendant and the offense are suitable for diversion." (§ 1001.36, subd. (b)(3), italics added; *People v. Bunas* (2022) 79 Cal.App.5th 840, 859–860.)

9

Here, the trial court unambiguously denied diversion not only because Tooker failed to make a prima facie showing that he did not pose an unreasonable risk of danger but also because, "as a matter of discretion," it concluded he and his offenses were not "suitable for mental health diversion." Thus, even if the eligibility determination were erroneous, the unchallenged suitability determination independently requires us to affirm the court's order. Tooker offers no argument otherwise. Nevertheless, since the Attorney General did not plainly argue in his briefing that the court's suitability determination is an independent basis for affirming, we address the merits of Tooker's challenge to the court's eligibility determination.

The criterion at issue requires the trial court to be "satisfied that the defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36(b)(1)(F).) Section 1170.18 defines "unreasonable risk of danger to public safety" as "an unreasonable risk that [a person] will commit a new violent felony within the meaning of [section 667, subdivision (e)(2)(C)(iv)]." (§ 1170.18, subd. (c).) Such "super strikes" include "[a]ny homicide offense, including any attempted homicide offense," and "[s]olicitation to commit murder." (§ 667, subd. (e)(2)(C)(iv)(IV)–(V).) In deciding whether a defendant poses an unreasonable risk of danger to public safety, a court "may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's violence and criminal history, the current charged offense, and any other factors the court deems appropriate." (§ 1001.36(b)(1)(F).)

Tooker relies on two opinions holding that a trial court abused its discretion in concluding a defendant who sought diversion posed an unreasonable risk of danger under section 1001.36(b)(1)(F). (*People v.*

10

*Williams* (2021) 63 Cal.App.5th 990, 993 (*Williams*); *Moine, supra,* 62 Cal.App.5th at pp. 444, 446.) In *Moine,* the Second District Court of Appeal construed this provision to mean that "a trial court necessarily must find the defendant is 'likely to commit a super-strike offense' " to deny diversion on this ground. (*Moine,* at p. 450.) In other words, "the risk of danger is narrowly confined to the likelihood the defendant will commit a limited subset of violent felonies." (*Ibid.*) In *Williams,* Division Two of this court agreed this is the correct standard for determinations under section 1001.36(b)(1)(F). (*Williams,* at p. 1001.)

*Moine* held that in light of this "high standard . . . , the record [before it did] not support the trial court's implied finding that [the defendant] was likely to commit a super-strike offense if he received mental health treatment in the community." (*Moine, supra,* 62 Cal.App.5th at p. 451.) The charges at issue, assault and criminal threats, were not super strikes even though they "involv[ed] allegations of violence and threats of violence," and the defendant's criminal record did not include any violent felonies. (*Id.* at pp. 444, 450.) In addition, "two psychiatrists determined that [the defendant] posed a low risk for future assault." (*Id.* at p. 451.) Finally, the trial court had also released the defendant "on bond for a period of over two years," which required the finding that he "was not likely to cause 'great bodily harm to others' if released." (*Ibid.*)

In turn, *Williams* concluded that "*Moine* compel[led] reversal" on the record before it. (*Williams, supra,* 63 Cal.App.5th at p. 1003.) In *Williams,* there was "ample evidence" that the defendant, who was charged with felony stalking and misdemeanor criminal threats, had "terrorized a family," and his "threats were violent, hateful[,] and specific." (*Id.* at pp. 994, 1003.) Nonetheless, similar to the circumstances in *Moine,* the charges were not

11

super strikes, the defendant "pose[d] a low risk to public safety in the uncontroverted opinion of two mental health professionals, there [was] no evidence he owned, possessed[,] or had access to any weapons [citation], and he, too, was released on bond for more than two years without incident." (*Williams*, at p. 1003.) Indeed, "the record of [the defendant's] potential dangerousness [was] even weaker" than that in *Moine*, since the *Williams* defendant had no prior criminal record "and, for all of his horrific threats, he never actually assaulted anyone or engaged in any violence." (*Williams*, at p. 1003.)

Although acknowledging that "the facts of the present case certainly are not identical to those in *Moine* and *Williams*," Tooker argues that those decisions are "instructive on the exercise of discretion to deny mental health diversion on public safety grounds." Assuming, without deciding, that the applicable standard is whether a defendant is "likely to commit a super-strike offense," we conclude the trial court did not abuse its discretion by determining that Tooker posed an unreasonable risk of danger. Unlike the *Moine* and *Williams* defendants, Tooker had a prior history of violent behavior, was charged with (and convicted of) a super strike, during which he used one deadly weapon to seriously injure the victim and threatened to use another, and went on to commit another possible super strike, soliciting M.A.'s murder while in jail. Thus, although he attempts to minimize his criminal history and the incident at issue, which he characterizes as "essentially a crime of passion," there was plenty of evidence to support the court's conclusion that he posed an unreasonable risk of danger to public safety if released.

We recognize that *Moine* and *Williams* did not involve a trial court's summary ruling, and those opinions therefore did not consider what prima

facie showing a defendant must make to satisfy section 1001.36(b)(1)(F). Traditionally, in evaluating whether a party has made a prima facie case for relief, a court assumes the party's factual allegations are true. (See, e.g., *People v. Lewis* (2021) 11 Cal.5th 952, 971 [section 1170.95 relief]; *People v. Duvall* (1995) 9 Cal.4th 464, 474–475 [habeas relief].) Thus, to avoid summary denial of diversion, Tooker arguably had to make a lesser showing than did the defendants in *Moine* and *Williams*. But Tooker does not address how this aspect of the case's procedural posture affects our review, and we are satisfied it does not make a material difference under the circumstances. It was undisputed that Tooker committed a super strike and had a history of violent behavior, and unlike in *Moines* and *Williams*, there was no affirmative indication that he had a low risk of reoffending. Nor did he claim that treatment in the community might reduce the risk he otherwise posed. In short, based on this record, the trial court did not abuse its discretion by summarily denying diversion on the basis that Tooker posed an unreasonable risk of danger to public safety if released.

        3.     The denial of a continuance was harmless.

Tooker also claims the trial court abused its discretion by denying his request for a continuance to present additional evidence relevant to his request for diversion. We reject this claim.

"To continue any hearing in a criminal proceeding," a party must show good cause for the continuance. (§ 1050, subds. (b), (e).) Whether to grant a continuance " 'rests within the sound discretion of the trial court,' " and we do not reverse the denial of a continuance "[a]bsent a showing of abuse of discretion and prejudice to the defendant." (*People v. Jacobs* (2007) 156 Cal.App.4th 728, 735–736.) Specifically, to prevail on appeal, a defendant must demonstrate a reasonable probability of a more favorable

13

outcome had the continuance been granted. (*People v. Hawkins* (1995) 10 Cal.4th 920, 945.)

Tooker argues that the evidence he sought additional time to present "would have been pertinent to several of the elements the defense had to establish in order to show eligibility and suitability for diversion," particularly "the existence of current mental health conditions as well as their amenability to treatment." He disputes the trial court's conclusion that this evidence was not relevant to whether he posed an unreasonable risk of danger to public safety. He reasons that since section 1001.36(b)(1)(F) requires a court to consider whether such a risk would exist *if the defendant was treated in the community*, expert testimony about the potential effect of treatment "certainly would have informed the court's determination."

We need not determine whether the trial court erred in denying a continuance because Tooker fails to show that any error was prejudicial. As discussed above, the court denied diversion not only on the basis that Tooker posed an unreasonable risk of danger to public safety but also that he and the offenses were unsuitable for diversion. Tooker does not explain how the additional evidence he sought to present would have affected the court's suitability determination, except to say that evidence relevant to eligibility would have also borne on suitability. But the court's suitability determination focused on the seriousness of Tooker's crimes, and we conclude there is no reasonable probability that additional evidence would have affected that determination. Therefore, the claim fails.

B.     *Remand Under Senate Bill No. 567 Is Unnecessary.*

Tooker next contends that a new sentencing hearing is required under Senate Bill No. 567, which amended section 1170 in various ways affecting a trial court's discretion to select among three possible terms of imprisonment.

14

Specifically, he argues that remand is required because (1) the aggravating factors the trial court relied on to impose upper terms were not found true beyond a reasonable doubt and (2) the bill created a presumption that the lower term be imposed if a defendant's trauma was a contributing factor to the crimes. We are not persuaded.

### 1. Additional facts

Tooker was sentenced to the upper term on all five felony convictions.[8] At the time of sentencing, former section 1170, subdivision (b), provided that when a defendant was sentenced to prison for a crime with a sentencing triad, "the choice of the appropriate term shall rest within the sound discretion of the [trial] court." Former California Rules of Court, rule 4.420(b), provided that in exercising this discretion, a trial court could "consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision."[9]

Here, the trial court relied on six aggravating factors under rule 4.421(a) to impose the upper term for the felony offenses. These were that the crimes "involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness" under rule 4.421(a)(1); Tooker "was armed with or used a weapon" under rule 4.421(a)(2); M.A. was "particularly vulnerable" under rule 4.421(a)(3); Tooker "threatened witnesses, unlawfully prevented or dissuaded witnesses from testifying, suborned perjury, or in any other way illegally interfered with the judicial process" under rule 4.421(a)(6); the way in which the crimes were committed "indicate[d] planning, sophistication, or

---

[8] Only the term imposed for attempted murder affected the total sentence: By operation of law Tooker received one-third the midterm for criminal threats, and the terms for the other three felonies were stayed.

[9] All further rule references are to the California Rules of Court.

15

professionalism" under rule 4.421(a)(8); and Tooker "engaged in violent conduct that indicates a serious danger to society" under rule 4.421(b)(1). The court also found no mitigating factors, thereby rejecting the probation department's position that Tooker "was suffering from a mental or physical condition that significantly reduced culpability for the crime[s]" under rule 4.423(b)(2).

### 2.  Senate Bill No. 567

Effective January 1, 2022, Senate Bill No. 567 amended section 1170 to provide that a trial court "shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (§ 1170, subd. (b)(1); Stats. 2021, ch. 731, § 1.3.) In turn, subdivision (b)(2) of the statute provides that "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial."[10] (§ 1170, subd. (b)(2).) Thus, Senate Bill No. 567 "make[s] the middle term the presumptive sentence" unless aggravating factors admitted or proved beyond a reasonable doubt justify the upper term. (*People v. Lopez* (2022) 78 Cal.App.5th 459, 464 (*Lopez*).)

---

[10] Likewise, rule 4.420(b) has been amended to provide that the trial court "may only choose an upper term when (1) there are circumstances in aggravation of the crime that justify the imposition of an upper term, and (2) the facts underlying those circumstances have been (i) stipulated to by the defendant, (ii) found true beyond a reasonable doubt at trial by a jury, or (iii) found true beyond a reasonable doubt by the judge in a court trial."

Senate Bill No. 567 also amended section 1170 to provide that "unless the [trial] court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term" if one of a list of factors "was a contributing factor in the commission of the offense." (§ 1170, subd. (b)(6); Stats. 2021, ch. 731, § 1.3.) These factors include that the defendant "experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1170, subd. (b)(6)(A).)

As the parties agree, Senate Bill No. 567 is ameliorative legislation that applies retroactively to judgments, like Tooker's, that were not final at the time it took effect. (*In re Estrada* (1965) 63 Cal.2d 740, 745; *People v. Jones* (2022) 79 Cal.App.5th 37, 44; *Lopez, supra,* 78 Cal.App.5th at p. 465.) But they disagree about whether remand is required for the trial court to consider whether to impose the middle or lower term instead of the upper term. We agree with the Attorney General that remand is unnecessary.

3.    Analysis

We begin with Tooker's argument that remand is necessary because "the record . . . fails to show that each of the aggravating factors relied upon by the trial court to impose upper terms . . . [was] found true beyond a reasonable doubt." As the Fourth District Court of Appeal explained in *Lopez*, assessing whether remand is required where the trial court relied on aggravating factors not stipulated to or found true beyond a reasonable doubt is "a two-step process." (*Lopez, supra,* 78 Cal.App.5th at p. 467, fn. 11.) "[T]he initial relevant question for purposes of determining whether prejudice resulted from failure to apply the new version of the sentencing law is whether the reviewing court can conclude beyond [a] reasonable doubt that a

17

jury would have found true beyond a reasonable doubt *all* of the aggravating factors on which the trial court relied in exercising its discretion to select the upper term. If the answer to this question is 'yes,' then the defendant has not suffered prejudice from the court's reliance on factors not found true by a jury in selecting the upper term. However, if the answer to the question is 'no,' we then consider the second question, which is whether a reviewing court can be certain . . . that the trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors, or none of the aggravating factors, rather than all of the factors on which it previously relied. If the answer to both of these questions is 'no,' then it is clear that remand to the trial court for resentencing is necessary." (*Ibid.*)

In reaching this holding, *Lopez* disagreed with *People v. Flores* (2022) 75 Cal.App.5th 495, in which Division Three of this court held that remand for resentencing under Senate Bill No. 567 is unnecessary if the reviewing court concludes, "beyond a reasonable doubt, [that] the jury would have found true at least one aggravating circumstance." (*Flores*, at p. 501; *Lopez*, *supra*, 78 Cal.App.5th at p. 467, fn. 11.) *Lopez* held that such a conclusion is not enough, explaining that, while a "trial court may still rely on any single permissible aggravating factor to select an upper term sentence under the newly revised triad system," the relevant question is whether the reviewing court "can be assured that the trial court *would have exercised its discretion to impose the upper term*" even if it had realized that other factors on which it relied could not be considered. (*Lopez*, at p. 467.) We find *Lopez*'s reasoning on this point persuasive, and we therefore apply that decision's prejudice analysis.

Before proceeding to *Lopez*'s first step, we note that the scope of Tooker's claim is unclear. In his opening brief, Tooker argues that remand is necessary for the trial court to reconsider whether "to impose upper terms on the counts of conviction," suggesting that he challenges the imposition of the upper term for all the felonies. But the Attorney General's brief argues that imposition of the upper term for attempted murder should be deemed harmless, without mentioning the upper terms imposed for the remaining felonies. In his reply brief, Tooker responds to this argument without suggesting that it improperly overlooked the other felonies. In an abundance of caution, we will assume that Tooker challenges all the aggravated terms.

Under *Lopez*'s first step, we consider whether "a jury would have found true beyond a reasonable doubt every factor on which the [trial] court relied" in imposing the aggravated term. (*Lopez, supra*, 78 Cal.App.5th at p. 466, italics omitted.) Determining with certainty that a jury would have found true an aggravating factor is often difficult. "[A] reviewing court cannot always be confident that the factual record would have been the same had aggravating circumstances been charged and tried to the jury." (*People v. Sandoval* (2007) 41 Cal.4th 825, 840.) Moreover, "to the extent a potential aggravating circumstance . . . rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." (*Ibid.*)

We agree with Tooker that four of the aggravating factors at issue were not presented to the jury and might not have been found true if they had been. As the Attorney General effectively concedes, the jury did not make findings establishing that Tooker threatened or dissuaded witnesses from testifying, that his crimes involved "planning, sophistication, or

19

professionalism," that M.A. "was particularly vulnerable," or that Tooker's "violent conduct . . . indicates a serious danger to society." (Rule 4.421(a)(3), (6), (8), (b)(1).) The evidence that Tooker threatened or dissuaded witnesses from testifying and that the crimes involved "planning, sophistication, or professionalism" was not so overwhelming that we can say the jury would have necessarily found those factors true. (Rule 4.421(a)(6), (8).) As Tooker points out, the prosecution elected not to charge him with any crimes based on his conduct in jail, and the jury rejected the allegation that the attempted murder was deliberate and premeditated. There was also some evidence that his brain injury played a role in the crimes. Similarly, although Tooker's crimes against M.A. were reprehensible, reasonable minds could differ as to whether she was "particularly vulnerable" or whether his focused violence against her "indicate[d] a serious danger to society." (Rule 4.421(a)(3), (b)(1).) Therefore, since we are not confident the jury would have found these four factors true, the court could not properly rely on them to impose upper terms.

Turning to the remaining two aggravating factors cited by the trial court, we agree with the Attorney General that the verdicts necessarily established as true beyond a reasonable doubt under rule 4.421(a)(2) that "[t]he defendant was armed with or used a weapon" during the crimes (weapons-use factor). The jury found that Tooker personally used a firearm in committing criminal threats, and it necessarily found that he used a weapon during the remaining felonies by convicting him of assault with a deadly weapon (the pruning shears) based on the same underlying course of conduct.

The trial court could properly rely on the weapons-use factor to impose the upper term for only some of Tooker's crimes. A court may not rely on an aggravating factor that is "an element of the crime on which punishment is

20

being imposed." (Rule 4.420(h).) Nor may a court rely on an aggravating factor that is "charged and found as an enhancement," unless "the court has discretion to strike the punishment for the enhancement and does so." (Rule 4.420(g); § 1170, subd. (b)(5).) Thus, the court could rely on the weapons-use factor to impose the aggravated term for attempted murder, the strangulation-based assault, and the corporal-injury offense, since use of a weapon was not an element of or enhancement for those crimes. But the court could not rely on this factor to impose the aggravated term for the other two felonies, since the use of a weapon is an element of assault with a deadly weapon and the court did not strike the punishment for the firearm enhancement accompanying the criminal-threats conviction.

For four of the felonies, the verdicts also established the aggravating factor under rule 4.421(a)(1) that the crimes "involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness" (violence factor). The jury found true the enhancement that Tooker "personally inflict[ed] great bodily injury" during the attempted murder, the strangulation-based assault, and the corporal-injury offense. (§ 12022.7, subd. (e)(1).) In addition, the conviction for criminal threats required as an element that he "threaten[ed] to commit a crime which will result in death or great bodily injury to another person." (§ 422, subd. (a).) Thus, the jury found true beyond a reasonable doubt that these felonies involved "great bodily harm" or "threat of great bodily harm" under rule 4.421(a)(1).[11] (See *People v. Burroughs* (1984) 35 Cal.3d 824, 831 ["great bodily harm" and GBI are essentially equivalent].)

---

[11] As for the assault with a deadly weapon, the jury hung on the allegation that Tooker personally inflicted GBI under circumstances involving domestic violence. Thus, we cannot say that the jury necessarily found this assault involved great bodily harm or threat thereof.

Nonetheless, the GBI-related findings alone did not authorize the trial court to impose upper terms. As to these felonies, GBI or a threat of GBI were either elements of the crime or the basis of enhancements for which punishment was imposed. (See rule 4.420(g)–(h); § 1170, subd. (b)(5).)

In contrast to the weapons-use factor, however, the violence factor may be established by circumstances in addition to those the jury found true here. The factor is established not only by great bodily harm or a threat of great bodily harm but also acts "disclosing a high degree of cruelty, viciousness, or callousness." For example, in *People v. Gutierrez* (1992) 10 Cal.App.4th 1729, the trial court improperly relied on "the fact the crime involved [GBI]" to impose the aggravated term for attempted murder, since the court also imposed an enhancement for GBI. (*Id.* at p. 1735.) *Gutierrez* concluded the error was harmless because the defendant's conduct also "demonstrate[d] a high degree of cruelty, viciousness, and callousness" beyond the injury to the victim, since the defendant also endangered the public and demonstrated "indifference to human life." (*Id.* at pp. 1735–1736.) Here, if the jury would have found that Tooker's conduct demonstrated a high degree of cruelty, viciousness, or callousness, then the trial court could have properly relied on this factor to impose the aggravated terms for all five felonies despite the GBI-related elements and enhancements.

Although the violence factor requires a subjective analysis, this is the unusual case in which "we find no difficulty in concluding the jury would have found [the] defendant's crimes involved such great violence and bodily harm as to disclose a high degree of cruelty, viciousness, or callousness." (*People v. Martinez* (2008) 166 Cal.App.4th 1598, 1607.) *Martinez* is instructive. There, the Third District Court of Appeal concluded that reliance on this factor to impose the aggravated term for various crimes, including

22

assault and criminal threats, was harmless because the evidence supporting the factor was "both objective and compelling." (*Ibid.*) Specifically, the "[d]efendant engaged in a prolonged vicious attack on the victim, repeatedly hitting and kicking her," leaving her with several broken and fractured bones, extensive bruising, and a high level of pain. (*Ibid.*) Here, Tooker threatened to kill M.A. while displaying a gun, chased her and pulled her to the ground, and, during a prolonged struggle, stabbed her numerous times in her head and neck and attempted to strangle her. She was left with significant scarring, and she was still in pain due to nerve damage months after the attack. In light of this evidence, there is no reasonable doubt that the jury would have found Tooker acted with cruelty, viciousness, or callousness had it considered the question.

To summarize, we conclude that the trial court could properly rely on the weapons-use factor to impose the aggravated term for attempted murder, the strangulation-based assault, and the corporal-injury offense, and on the violence factor to impose the aggravated term for all the felonies. We thus turn to the second step under *Lopez* and consider whether "the trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on" only these two factors. (*Lopez*, *supra*, 78 Cal.App.5th at p. 467, fn. 11.)

We are convinced beyond a reasonable doubt that the answer is yes and the trial court still would have imposed the upper terms for the felonies. At the sentencing hearing, after noting that it was imposing the maximum possible sentence, the court told Tooker, "I don't think it's inappropriate at all, in fact I think it's quite appropriate that you receive that amount of time for the facts and circumstances of this particular case[,] which . . . I do find to be on the very high end of conduct of this sort. I believe that if it wasn't for

23

the good Samaritans . . . who jumped over a fence and ran through a fence to save [M.A.], [you] would have killed her that morning." In addition, the court observed that while the attempted murder count had to be the principal term, "[i]nterestingly, if the court used [criminal threats count] . . . as the principal term the sentence would be greater, but I don't think that would be a lawful sentence. So although an attractive option, frankly, given the circumstances here, I don't think that would be a lawful sentence so I'm not going to do that." In light of these statements expressing an intent to impose the longest sentence possible, we conclude that the court would have imposed the upper term for all the felonies even if it had been aware it could rely on only two of the aggravating factors it listed.

Based on these statements, we also reject Tooker's claim that remand is necessary for the trial court to consider whether, "given [his] history as an assault victim . . . who suffered traumatic brain injury," the lower term is justified under amended section 1170, subdivision (b)(6). Initially, we disagree with the Attorney General's suggestion that remand would be futile because the court rejected the proposed mitigating factor that Tooker "was suffering from a mental or physical condition that significantly reduced culpability for the crime[s]" under rule 4.423(b)(2). To trigger the presumption that the lower term is appropriate, a defendant's trauma must have been "a contributing factor" to the crimes. (§ 1170, subd. (b)(6).) In our view, the requirement that the defendant's condition be "a contributing factor" to the crimes calls for less of a connection between the condition and the crimes than does the requirement that the condition "significantly reduce[]" the defendant's culpability. (See *People v. Banner* (2022) 77 Cal.App.5th 226, 241 ["contributing factor" under § 1170, subd. (b)(6), "is less than a significant factor" under § 1001.36, subd. (b)(1)(B)].)

Nonetheless, even if the trial court concluded that Tooker's physical trauma was a contributing factor to the offenses, the lower term need not be imposed when "the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6).) The court found no other mitigating factors, and it wished to impose the longest sentence possible. Therefore, " 'the record "clearly indicate[s]" that the . . . court would have reached the same conclusion' under the law as it now exists" even if it had weighed the role of Tooker's traumatic brain injury against the aggravating circumstances on which it properly relied. (*People v. Banner*, *supra*, 77 Cal.App.5th at p. 242.)

C.      *Remand Under Assembly Bill No. 518 Would Be Futile.*

Finally, Tooker also claims that remand is required for the trial court to exercise its new discretion under Assembly Bill No. 518. We conclude that remand for this purpose is also unnecessary.

At the time of sentencing, section 654 required a trial court to sentence a defendant for an act "punishable in different ways by different provisions of law . . . under the provision that provide[d] for the longest potential term of imprisonment" and stay execution of the other term. (Former § 654, subd. (a); *People v. Mani* (2022) 74 Cal.App.5th 343, 379.) Effective January 1, 2022, Assembly Bill No. 518 amended section 654 to provide that an act "punishable in different ways by different provisions of law may be punished under either of such provisions." (§ 654, subd. (a); Stats. 2021, ch. 441, § 1.) Thus, courts now have "discretion to impose and execute the sentence of either term, which could result in . . . [execution of] the shorter sentence rather than the longer sentence." (*Mani*, at p. 379.)

25

The parties properly agree that Assembly Bill No. 518 is retroactive and applies to Tooker's nonfinal judgment. (*In re Estrada*, *supra*, 63 Cal.2d at p. 745; *People v. Jones*, *supra*, 79 Cal.App.5th at p. 44; *People v. Mani*, *supra*, 74 Cal.App.5th at p. 379.) In addition, Tooker could theoretically benefit from the legislation. The trial court imposed a total of 14 years for the attempted murder and stayed terms of nine years each under section 654 for the three remaining assault-related felonies. Thus, under Assembly Bill No. 518, the court would have discretion to impose nine years for one of these felonies and stay the 14-year term for attempted murder.

Nonetheless, we agree with the Attorney General that remand would be futile because the trial court "made clear that it intended to impose the maximum amount of time" for Tooker's convictions. Generally, if a trial court believed it lacked discretion to make a particular sentencing choice, remand is required for the court to exercise that discretion " 'unless the record shows that the sentencing court clearly indicated that it would not, in any event, have exercised its discretion' " to make that choice. (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425.) Here, this standard is satisfied because the trial court clearly indicated it intended to impose the maximum possible sentence on Tooker, as discussed above. (See *id*. at p. 427.) On this record, we have no doubt that the court would decline to exercise its discretion to execute the term on one of the assault-related felonies instead of the attempted murder.

## III.
### DISPOSITION

The August 5, 2021 order denying mental health diversion is affirmed. The matter is remanded to the trial court with directions to reinstate the judgment if it has not already done so.

26

_____

Humes, P.J.


WE CONCUR:




_____

Margulies, J.




_____

Wiss, J. *




     \*Judge of the Superior Court of the City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


*People v. Tooker*  A163332